ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966
Fax: 408-866-7334
Emails: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| In re: <br><br> FREMONT HILLS DEVELOPMENT CORPORATION, <br><br> Debtor / debtor-in-possession. | Case No.: 21-50240-SLJ <br> Chapter 11 <br><br> **PLAN OF REORGANIZATION DATED JULY 14, 2021 [PROPOSED]** <br><br> **Date:** September 2, 2021 <br> **Time:** 1:30 p.m. <br> **Place:** \*\*Hearing to be conducted by Tele / Video Conference <br><br> **Judge: Honorable Stephen L. Johnson** |

ARTICLE I

DEFINITIONS

**A. Defined Terms**

1. "Allowed Claim" or "Allowed Interest" means a claim against the Debtor, including interest of the Debtor where applicable, or an equity security interest in the Debtor, to the extent that:

Plan of Reorganization Dated July 14, 2021 [Proposed] - 1

    a.        proof of such claim or interest was:
            (1)       timely filed, or
            (2)       deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, and
    b.        (1)       is not a disputed claim or
            (2)       is allowed and only to the extent of the *Final Order*.

2.       "Available Cash" means the Cash held by the Debtor on the Effective Date.

3.       "Bankruptcy Code" means Title 11 of the United States Bankruptcy Code.

4.       Class 7 Election means an *Eligible Class 5* Claimant which elects to have its claim treated as a Class 7 claim rather than a Class 8 claim

5.       "Debtor" means Fremont Hills Development Corporation, the Debtor and Debtor-in-Possession in the Chapter 11 case.

6.       "Disputed Claim" or "Disputed Interest" means a claim against or interest in the Debtor (a) which has been included in the Debtor's schedules as disputed, contingent or unliquidated or (b) as to which an objection has been filed on or before the Effective Date and which objection is not the subject of a Final Order and has not been withdrawn.

7.       "Distribution" means the Cash to be distributed under the Plan to holders of *Allowed Claims*.

8.       "Effective Date" means the date that is 30 days after the entry of the Order Confirming Plan.

9.       "Eligible Class 5 Claimant" means one which meets *all* of the following criteria:

    a.        If the claimant renders services for which a license is required, as of the deadline for ballots to be cast, its license is current and in good standing with any and all licensing agencies.
    b.        the Claimant agrees to render post-confirmation services to Debtor or agrees to supply construction materials to Debtor post-confirmation.
    c.        the Claimant agrees to provide post-confirmation services or supply construction materials post-confirmation at a price which is the lower of (i) its *Prevailing Rates and Prices* or (ii) 5% over any other outside arms-length bid obtained by the Debtor for like services or construction materials;

d. in the event the Claimant makes a timely Class 7 election, but subsequently refuses to provide services or construction materials as set forth in section "c" above, it shall be re-classified as a Class 8 general unsecured creditor.

10. "Filing Date" means the date this Chapter 11 case was filed.

11. "Final Order" means an order of the Bankruptcy Court or the District Court as to which (a) an appeal that has been taken has been finally determined and dismissed, or (b) the time for appeal has expired and a notice of appeal has not been timely filed.

12. "Material Default Defined". If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in *Material Default* under the Plan to all the members of the affected class.

13. "Non-Classified Claims" means claims of the type described in Article III of the Plan.

14. "Prevailing Rates and Prices" means a price no higher than the Creditor, within the last 90 days, offered to render services or sell materials to any other customer.

15. "Project" means a development project at 2501 Cormack Rd. Fremont, CA consisting of approximately 297,790 square foot gross (252,662 square foot net rentable) buildings on 12.62 acres in the Fremont foothills ["Property"] with frontage on Interstate 680. It consists of four buildings (4 to 6 stories in height) with retail covering the podium parking with residential units on the upper floors. There are a total of 158 residential units (all at market

rate); 53,900 square feet of retail, 171 on grade parking (covered) and 397 surface parking spaces. The residential units consist of one, two and three-bedroom units with an average unit size of 1258 square feet.

16. "Project Completion Date is the date of the issuance of a Notice of Completion by the City of Fremont Building Department, or if no such notice is issued, the earlier of the date escrow closes on the first residential or commercial condominium unit within the Project or the first residential or commercial unit is rented within the Project.

17. "Property" means the real property at 2501 Cormack Rd., Fremont, CA

18. "Reorganized Debtor" means the entity which, after the Confirmation Date, shall hold title to and control all assets to be administered under this Plan, and shall have such powers, duties and obligations as are set forth in the Plan, the Confirmation Order, other orders of the Bankruptcy Court, or applicable bankruptcy and non-bankruptcy law.

### B. Undefined Terms

Any term that is used in the Plan, but not defined above, but is defined in the Bankruptcy Code has the meaning given to that term in the Bankruptcy Code.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Claimants shall receive Distributions set forth in this Article II on account of, and in complete satisfaction of their Allowed Claims.

### A. <u>Fully Secured Claim to be Paid in Full</u>

| Class | Claimant | Amount | Post-petition Interest Rate | Estimated Amount Due 120 days after Effective Date |
|---|---|---|---|---|
| 1 | Alameda Co. Tax Collector | 437,661.60 | 18.00% | $542,699.70 |
| | | | | |

The Class 1 Creditor Alameda County Property Tax Collector is owed pre-petition property tax arrears on the Property in the amount of $437,661.60 as set forth in its timely filed POC Nos. 4-1 and 5. It is over-secured. Debtor will pay the Class 1 allowed claim together with post-petition interest at the rate set forth in the table above in full in a single lump sum payment due the sooner of the re-finance of the Property or within 120 days of the Effective Date of the Plan. There shall be no interim monthly payments. Creditors in these classes shall retain their interest in the collateral until fully paid.

The Class 1 Creditor may not repossess or dispose of its collateral so long as Debtor is not in *Material Default* under the Plan.

Payment to the Class 1 Claimant may continue past the date Debtor obtains a discharge. The Class 1 Claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan. **The Class 1 Claimant is impaired and is entitled to vote on confirmation of the Plan.**

**B. Debtor to Strip or Cram Lien to Value of Collateral and Pay in full within 120 Days**

| Class | Claimant | Amount (on petition date) | Post-petition interest rate / Post-confirmation interest rate | Estimated Amount Due 120 Days after Effective Date |
|---|---|---|---|---|
| 2a | Earth Systems Pacific | 71,300.30 | 10.00% / 10.00% | $80,807.07 if adjudicated to hold a second priority lien behind only Tax Collector, or 3rd priority lien behind only Tax Collector and Finnco; else $37,000,000 less all senior liens |
| 2b | 2501 Cormack, LLC | 49,280,213.52 | 0% / 10.49% | $37,000,000 less Claim No. 1 less any liens adjudicated to be senior |
| 2c | BayArea Investment Fund, LLC (BAI) | 41,913,787.24 | 0.00% / 2.00% | $37,000,000 less Claim No. 1 less any liens adjudicated to be senior |
| 2d | Finnco | 175,033.15 | 10.00% / 10.00% | $198,370.91 if lien is adjudicated to be senior to both BAI and 2501 Cormack, LLC |

2501 Cormack, LLC has a security interest in the Property pursuant to its trust deed. Debtor contends that the value of equity in the 2501 Cormack, Inc. collateral is less than the amount of its claim. Absent stipulation with 2501 Cormack, LLC, before confirmation, Debtor will obtain an order from the court determining the value of 2501 Cormack, Inc.'s collateral.

Earth Systems Pacific has a mechanic's lien against the Property which, by order of the Alameda County Superior Court, relates back to May 1, 2017.

Finnco contends that its lien is senior to Earth Systems Pacific and senior to 2501 Cormack, LLC. Debtor disagrees. Finnco contends that BAI does not have a lien. Debtor

agrees. BAI asserts that it has an equitable lien making it senior to 2501 Cormack, Inc. Debtor disagrees.

Debtor will pay the allowed secured claims in order of priority, as these may be adjudicated or resolved by stipulation, up to $37,000,000, the value per this Plan of its real property collateral. The allowed unsecured or under-secured balance, if any shall be paid as a Class 6 Claim (as to 2501 Cormack, LLC and BAI) or a Class 5 claim (as to Finnco and Earth Systems Pacific).

These allowed secured claims to the extent of the value of the real property collateral will be paid together with post-petition interest if the claim is fully secured and with post-confirmation interest as set forth in the table above, in a single lump sum payment due within 120 days of the Effective Date of the Plan. There shall be no interim monthly payments. Creditors in these classes shall retain their interest in the collateral until fully paid.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **These creditors, are impaired and are entitled to vote on confirmation of the Plan.**

Payment to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against their collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

### C. Debtor to Strip Lien to Value of the Personal Property Collateral and Pay the Secured Amount in Full within 120 Days of the Effective Date

**Class 3 – 2501 Cormack, LLC**

As to 2501 Cormack, LLC only, in addition to any security position it has relating to the Property, 2501 Cormack, LLC has a security interest in personal property pursuant to a UCC-1.

In addition to any payment that 2501 Cormack, Inc. is entitled to as to any security interest in real property, it shall be paid $13,060 without interest for its security interest in personal property. Such amount shall be paid in a single lump sum payment due within 120 days of the Effective Date of the Plan. There shall be no interim monthly payments.

2501 Cormack, LLC shall retain its interest in its personal property collateral until Debtor makes the $13,060 payment. 2501 Cormack, LLC may not repossess or dispose of its collateral so long as Debtor is not in *Material Default* under the Plan. Payment to 2501 Cormack, LLC may continue past the date Debtor obtains a discharge. 2501 Cormack's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan. **This secured claimant is impaired and is entitled to vote on confirmation of the Plan.**

### D. Class 4: Grand Ocean Holdings – Totally Under-secured Creditor

Prior to confirmation, Debtor will obtain an order or stipulation fixing the secured amount of Grand Ocean Holding's claim at zero. On entry of an order or stipulation valuing its lien at zero, Grand Ocean Holdings' lien shall be void for all purposes conditioned only on debtor obtaining a discharge or completing all payments under the confirmed plan. On entry of discharge or completion of plan payments, Debtor may apply for a *Final Order* voiding Grand Ocean Holding's' lien at zero under 11 U.S.C. §506 and FRBP 3012 on 7-day notice to Grand Ocean Holdings and opportunity for hearing. Debtor will pay nothing to Grand Ocean Holdings as a secured claim. Any allowed claim of Grand Ocean Holdings is a general unsecured claim treated as a Class 8 General Unsecured Claim. Grand Ocean Holdings shall retain its interest in the collateral until entry of discharge. Grand Ocean Holdings may not repossess or dispose of its collateral so long as Debtor is not in *Material Default* under the Plan. On entry of discharge or completion of plan payments, Debtor may apply for a F*inal Order* voiding Grand Ocean

Holding's' lien at zero under 11 U.S.C. §506 and FRBP 3012 on 7 day notice to Grand Ocean Holdings and opportunity for hearing. **The claim of Grand Ocean Holdings is impaired and is entitled to vote on confirmation of the Plan.**

### E. Class 5a – 5g: Debtor to Strip off Lien and at Election of each Class 5 Claimant, pay as either a Class 7 or Class 8 Creditor:

| Class | Name of Creditor | Collateral | Amount Due |
|---|---|---|---|
| 5a | Ahern Rentals | 2501 Cormack Rd., Fremont, CA | 10,869.24 |
| 5b | Queens Land Builder, Inc. | 2501 Cormack Rd., Fremont, CA | 5,712,494.16 |
| 5c | HD Supply | 2501 Cormack Rd., Fremont, CA | 66,182.30 |
| 5d | Dayton Superior | 2501 Cormack Rd., Fremont, CA | 2,792,677.36 |
| 5e | Sunbelt Rentals, Inc. | 2501 Cormack Rd., Fremont, CA | 60,617.89 |
| 5f | Finnco (Only if it is not adjudicated fully secured) | 2501 Cormack Rd., Fremont, CA | 175,033.15 |
| 5g | Earth Systems Pacific (Only if BAI creditor is adjudicated as having a lien which would render Earth Systems Pacific under-secured) | | |
| TOTAL | | | 8,817,174.10 |

Prior to confirmation, Debtor will obtain an order(s) or stipulation(s) fixing the secured amount of the above creditors' claims at zero. Debtor will pay nothing to the Class 5 claimants as secured claims. Any *Eligible Class 5* Claimant whose lien is stripped may elect to be treated either as a Class 7 Claimant (Class 7 Election) or a Class 8 claimant. It shall make this election concurrent with the casting of its ballot. If no election is timely made, if the Class 5 creditor becomes ineligible to be a Class 7 claimant or if it fails to cast a ballot, its allowed claim shall be

treated as a Class 8 claimant.

The Class 5 claimants shall retain their security interest in the collateral until entry of a *Final Order* voiding its lien, or stipulation of the Class 5 Claimant with Debtor, but are prohibited from taking any collection action against their collateral so long as Debtor is not in *Material Default* under the Plan. On entry of discharge or completion of plan payments, Debtor may apply for a *Final Order* voiding lien under 11 U.S.C. §506 and FRBP 3012 on 7 day notice to the Class 5 Claimant and opportunity for hearing. **Each Class 5 Creditor is a separate class. Each of these creditors is impaired and entitled to vote.**

### F. Under-Secured Competing Lien Claimants

The allowed amount of the unsecured or under-secured Bay Area Investment Fund, LLC (BAI) claim and the allowed unsecured or under-secured part of the 2501 Cormack, Inc. claim shall be treated as Class 6 claimants. These claimants shall be paid 7% of their allowed claim without interest in 18 equal monthly payments commencing on the first day of the 6th month after the *Project Completion Date*. **Class 6 claimants are impaired and are entitled to vote on confirmation of the Plan.**

### G. Class 7: Eligible Class 5 Claimants which elect to treat their allowed under-secured claim as a Class 7 claim

Any *Eligible Class 5 Claimant* who makes a timely *Class 7 Election* shall receive 50% of its allowed claim payable without interest in 18 equal monthly payments commencing on the first day of the 6th month after the *Project Completion Date*.

If a Class 5 claimant makes its election to be treated as a Class 7 claimant (and thereby agrees to continue to render services or provide materials), and Debtor later declines to use the Class 5 claimant's services, it shall retain its rights to be paid as a Class 7 creditor.

Any Eligible Class 7 Claimant that becomes ineligible shall have its allowed claim reclassified as a Class 8 general unsecured creditor. **Class 7 claimants are impaired and are entitled to vote on confirmation of the Plan.**

### H. Class 8 -- Other General Unsecured Claimants

The allowed claims of general unsecured creditors (including any allowed presently unknown claims of creditors whose executory contracts are being rejected under this Plan) shall receive a pro-rata share of a fund of $500,000 payable without interest in 18 equal monthly payments commencing on the first day of the 6th after the *Project Completion Date*.

In the event a Class 5 Claimant that made a timely *Class 7 Election* and was and *Eligible Class 5 Claimant* on the date of confirmation, but later became ineligible, Debtor shall recalculate the pro-rata distribution to the Class 8 claimants to account for this reclassification of claim. **These Class 8 creditors are impaired and are entitled to vote.**

### I. Class 9 – Equity Security Holders

The holders of the stock in Debtor shall retain their interest as that interest is set forth in the books and records of the Debtor on the date of confirmation.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF NON-CLASSIFIED CLAIMS

### A. Unclassified Allowed Administrative Claims

Other than Operational Administrative Claims, entitled to priority under Section 507(a)(1) of the Bankruptcy Code, administrative claimants will receive payments as may be agreed upon between the Debtor and the administrative claimants. There is an administrative

Plan of Reorganization Dated July 14, 2021 [Proposed] - 11

claim for professional fees owed to Debtor's counsel, Farsad Law Office, P.C., in a sum yet unknown but estimated at $200,000 depending on objections, motions and adversary proceedings that may be filed in the herein case. Debtor did not deposit any pre-petition retainer. Counsel anticipates seeking approval of fees for services rendered.   There are no other administrative professional claims that the Debtor is aware of at the present time.  Professional fees may be paid only upon application and approval by the Bankruptcy Court.  If authorized by the Court, Debtor anticipates that professional fees will be paid from *Available Cash* on the *Effective Date*. **Holders of administrative claims for unpaid professional fees are not entitled to vote on confirmation of the Plan.**

### B. <u>Pre-petition Priority Claim of the Internal Revenue Service</u>

The Code requires that the holders of priority pre-petition tax claims receive cash payments over a period not later than five (5) years after the date of the order for relief.  Here, the Internal Revenue Service filed a priority claim for $600.00.  It is entitled to priority under section 507(a)(8).  Debtor will pay the IRS priority claim in full together with post-petition accrued interest at the rate of 4% per annum, on the Effective Date.  Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in *Material Default* under the Plan. **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

### ARTICLE IV
### BASIC PLAN STRUCTURE

As of the petition date, all of the outstanding stock in Debtor is owned by Gadsden Growth Properties, L.P.  The general partner is Gadsden Growth Properties, Inc. Debtor has identified Nirvana Property Group, LLC ("Nirvana") which has agreed to acquire 100% of stock

Plan of Reorganization Dated July 14, 2021 [Proposed] - 12

Case: 21-50240    Doc# 75    Filed: 07/15/21    Entered: 07/15/21 16:21:15    Page 12 of 20

in the Debtor for $300,000 payable in payments. A true and correct copy of the Stock Purchase Agreement is attached to the Disclosure Statement as **Exhibit "9".** Debtor will bring a motion authorizing the sale of the stock.

Nirvana, through its own funds and through its lender contacts, will fund the plan as follows:

1. Nirvana, with its own capital or through a lender that it identifies, shall fund the Plan to retire fully secured lenders per the terms of the Plan.

2. Nirvana shall pay for any and all appraisals or valuation needed to support the Chapter 11 Reorganization plan.

3. Nirvana Agrees to fund Debtor's legal fees.

4. Nirvana shall commence and procure a loan commitment for take-out and construction financing with the International Brotherhood of Electrical Union or other qualified lenders ("New Loan") to support the Chapter 11 Reorganization Plan.

5. Nirvana shall commence and procure a general construction contract to support the Chapter 11 Reorganization Plan.

Nirvana has identified lenders to re-finance the Property and fund a construction loan to develop the Property. From the proceeds of a re-finance, the Class 1, those Class 2 claimants to the extent that these are adjudicated secured, and Class 3 claimant will be paid and the Property left lien-free to allow for the construction financing. The Project will be completed and the developed Project sold, or individual residential or commercial condominiums sold or rented, or financing put in place to take out the construction loan. From the proceeds of sale, rental cash flow, or new financing, the Class 6, 7 and 8 creditors will be paid.

# ARTICLE V

# MODIFICATION OF PLAN

The Debtor may propose amendments or modifications of the Plan at any time prior to Confirmation if the Bankruptcy Court determines in accordance with Bankruptcy Rule 3019 that the proposed modification does not materially or adversely affect the interest of any holder of a Claim or Interest who has not in writing accepted such modification. If the Bankruptcy Court makes such a determination and approves such a modification, it shall be deemed accepted by all holders of Claims or Interest who have previously accepted the Plan.

# ARTICLE VI

# PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

The *Reorganized Debtor* may object in whole or in part to allowance of Claims filed with the Bankruptcy Court. All objections shall be litigated to *Final Order* or compromised and settled subject to the approval of the Bankruptcy Court after notice to the holder of such Claim and a hearing. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be served and filed no later than 60 days after the *Effective Date*. Nothing contained herein shall be construed to prohibit an Entity other than the *Reorganized Debtor* from objecting to the allowance of any Claim(s). Payments to objected claims shall be retained in the Plan Account until objections are resolved. After the objections are resolved payments shall be made as per the resolution of each claim.

# ARTICLE VII

# PROVISION REGARDING EXECUTORY CONTRACTS

Any executory contract or unexpired lease not previously assumed by the Debtor upon motion filed by the Debtor with the Bankruptcy Court prior to the Confirmation Date shall be

deemed to have been rejected on the *Effective Date*. Debtor does not know of any such executory contract or lease.

## ARTICLE VIII

## POST-CONFIRMATION U.S. TRUSTEE QUARTERLY FEES

A quarterly fee shall be paid by the Debtor to the United States Trustee, for deposits into the Treasury, for each quarter (including any fractional thereof) until this case is converted, dismissed or closed pursuant to Final Decree as required by 28 U.S.C. §1930(a)(6).

## ARTICLE IX

## RETENTION OF JURISDICTION

As of the *Effective Date*, the Bankruptcy Court shall retain such jurisdiction as is necessary and appropriate to implement the provisions of this Plan, including but not limited to, the following:

1. The classification of any Claim and the re-examination of Claims which have been allowed as of the Confirmation date.

2. Hearing and determining any objection made by the Debtor or any other party in interest, to any Claim (including claims arising from the rejection of any executory contract) or Interest. The failure by the Debtor or any other party in interest, to object to, or to examine, any claim for the purpose of voting shall not be deemed to be a waiver of its right or rights to object to, or to examine, any claim for purposes of determining allowability.

3. Determination of all questions and disputes regarding title to the assets of the estate;

4. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

5. The modification of this Plan after confirmation pursuant to Bankruptcy Code Section 1127.

6. To enforce and interpret the terms and conditions of this Plan;

7. To hear and determine adversary proceedings;

8. To make the allowances to all professionals for services in the Reorganization Case prior to the *Effective Date*, including Administrative Expenses;

9. Entry of an order concluding and terminating this case; and

10. The retention of such jurisdiction as is necessary to implement this Plan.

# ARTICLE X

## REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

A. **Automatic Stay Vacated.** The automatic stay of section 362(a) of the Bankruptcy Code terminates as of the Effective date of the Plan.

B. **Creditor Action Restrained.** The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, notwithstanding paragraph "A" above, a creditor may not take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in *Material Default* under the Plan, as defined in Article I, above.

C. **Remedies Upon Material Default.** Upon *Material Default*, an affected creditor may: (i) Take any actions permitted under applicable non-Bankruptcy law to enforce the obligation

due the affected creditor under the Plan, and may accelerate the time for performance of all payments and other performance due to the creditor over the course of the Plan and not yet performed at the time of the *Material Default*; or (ii) File and serve a motion to convert the case to one under Chapter 7

## ARTICLE XI

## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

A. **Discharge**. There shall be a discharge of the Debtor pursuant to Bankruptcy Code § 1141(d)(1)(A) on confirmation.

B. **Plan Creates New Obligations**. The obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent that a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## ARTICLE XII

## POST-CONFIRMATION REPORTS AND FINAL DECREE

A. **Post-Confirmation Reports**. Not later than 90 days after entry of the confirmation order, the *Reorganized Debtor* shall file a Post-Confirmation Status Report, explaining the progress made towards substantial consummation of the Confirmed Plan of Reorganization. The report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire 90-day period. The report shall also include information sufficiently comprehensive to enable the Court to determine (1) whether the Order Confirming

Plan has become final; (2) whether deposits, if any, required by the Plan have been distributed; (3) whether any property proposed by the Plan to be transferred has been transferred; (4) whether the *Reorganized Debtor* under the Plan has assumed the business or the management of the property dealt with by the Plan; (5) whether payments under the Plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. Section1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved. Further reports, including quarterly reports in the form prescribed by the U.S. Trustee, must be filed every 90 days thereafter until entry of a Final Decree, unless otherwise ordered by the Court.

   **B.**  **Service of Reports**. A copy of each report shall be served, no later than the day upon which it is filed with the Court, upon the United States Trustee and such other persons or entities as may request such reports in writing by special noticed filed with the Court.

   **C.**  **Effect of Failure to File Reports**. Failure to timely file the required reports shall constitutes grounds for dismissal of the case or conversion of the case to Chapter 7, whichever is in the best interest of the creditors and the estate, pursuant to 11 U.S.C. §1112(b).

   **D.**  **Vesting**. On the Effective Date, all property of the estates shall vest in the *Reorganized Debtor* pursuant to Section 1141(b) of the Bankruptcy Code, provided that the vesting of said property shall be without prejudice and shall not act as a bar to a post-confirmation motion to convert this case to one under Chapter 7 of Title 11 by the United States Trustee or any other party in interest on any appropriate grounds, and upon the granting of such motion the Plan shall terminate and the Chapter 7 estate shall consist of all remaining property of the Chapter 11 estate not already administered.  Such remaining property shall be administered

Plan of Reorganization Dated July 14, 2021 [Proposed] - 18

Case: 21-50240  Doc# 75  Filed: 07/15/21  Entered: 07/15/21 16:21:15  Page 18 of 20

by the Chapter 7 Trustee as prescribed in Chapter 7 of the Bankruptcy Code. The *Reorganized Debtor* reserves the right to oppose any such motion.

E. **Final Decree**. After the estate is fully administered, the *Reorganized Debtor* shall file an Application for a Final Decree, and shall serve the Application on the United States Trustee. On request by the Office of the United States Trustee, the form of the proposed order granting the Application shall be submitted to it for approval.

## ARTICLE XIII

## GENERAL PROVISIONS

A. **Cramdown.** Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors.

B. **Severability**. If any provision of the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision in the Plan.

C. **Binding Effect**. The rights and obligations of any entity named or referred to in the Plan will be binding upon and will inure to the benefit of the successors or assignee of such entity.

D. **Captions**. The headings contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

E. **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy procedure), the laws of the State of California govern the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise provided by the Plan.

F. **Disbursing Agent**. The Debtor shall act as the disbursing agent under the Plan and shall distribute all property or monies to be disbursed under the Plan.

G. **Post-Confirmation Activities**. Subsequent to the Effective Date of this Plan, the Debtor may continue to manage its Project and Property. Moreover, the Debtor shall have the authority to purchase, sell or lease property, to borrow money on a secured or unsecured basis, compromise controversies, and employ and pay accountants, attorneys and other professions without order of the court.

H. **Internal Revenue Code Section 108**. It is the express purpose of this Plan to conform to the provisions of and to qualify under subsections (a)(1)(A) and (d)(2) of section 108 of the Internal Revenue Code as a "discharge of indebtedness" pursuant to "a plan approved by the court" in a Title 11 case.

I. **Notices.** Any notice to the Debtor shall be in writing and mailed, and will be deemed to have been given three days after the date sent by first class mail, postage prepaid and addressed as follows:

| To the Debtor: | To Debtor's Attorney |
|---|---|
| Attention: Jae Ryu<br>Fremont Hills Development Corporation<br>2051 Junction Ave., Suite 230<br>San Jose, CA 95131 | Arasto Farsad<br>Nancy Weng<br>Farsad Law Office, P.C.<br>1625 The Alameda, Suite 525<br>San Jose, CA 95126 |

Dated: July 15, 2021

FREMONT HILLS DEVELOPMENT CORPORATION
By: */s/ Jae Ryu*
Designated Responsible Individual

Dated: July 15, 2021

FARSAD LAW OFFICE, P.C.
By: */s/ Nancy Weng*
Nancy Weng
Attorneys for Debtor

Plan of Reorganization Dated July 14, 2021 [Proposed] - 20

Case: 21-50240    Doc# 75    Filed: 07/15/21    Entered: 07/15/21 16:21:15    Page 20 of 20