ARASTO FARSAD (SBN: 273118)
NANCY WENG (SBN: 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: 408-641-9966
Fax: 408-866-7334
Emails: farsadlaw1@gmail.com;
nancy@farsadlaw.com

Attorneys for Debtor / debtor-in-possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.: 21-50240-SLJ |
| | Chapter 11 |
| | |
| FREMONT HILLS DEVELOPMENT CORPORATION, | **DISCLOSURE STATEMENT DATED JULY 14, 2021** |
| | **Date:** September 2, 2021 |
| | **Time:** 1:30 p.m. |
| Debtor / debtor-in-possession. | **Place:** **Hearing to be conducted by Tele / Video Conference |
| | **Judge: Honorable Stephen L. Johnson** |

**TABLE OF CONTENTS FOR DISCLOSURE STATEMENT**

**I. PURPOSE OF DISCLOSURE STATEMENT** .................................................. 3

**II. REPRESENTATIONS AND ADMONISHMENTS** ....................................... 4

**III. BACKGROUND OF DEBTOR** ........................................................................ 5

**VII. POST-PETITION STATUS OF THE DEBTOR AND THE CASE** ............................ **23**

    A. Financial Condition of the Debtor and Plan Feasibility ..................................... 23

**VIII. LIQUIDATION ANALYSIS AND DISTRIBUTIONS TO GENERAL UNSECURED CREDITORS** ............................................................................................................ **24**

**IX. PRE-PETITION LITIGATION, CLAIMS AGAINST OTHERS** ............................. **25**

**X. TAX CONSEQUENCES** ................................................................................. **26**

**XII CONFIRMATION OF THE PLAN** ................................................................ **28**

    A. Acceptance ................................................................................................... 28

    B. Vesting ...................................................................................................... 28

**XIII. POST-CONFIRMATION** ............................................................................ **29**

    A. Objections to Claim ........................................................................................ 29

# I.    PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement (the "Disclosure Statement") is being distributed to creditors of Fremont Hills Development Corporation ("Fremont Hills" hereinafter). This Disclosure Statement is made to all of the Debtor's known creditors in order to disclose information deemed to be material, important and necessary for creditors to arrive at a reasonably informed decision in exercising their rights to accept or reject the plan. Although the Bankruptcy Court has reviewed this Disclosure Statement and determined that this Disclosure Statement contains adequate information for that purpose, approval of this Disclosure Statement by the Bankruptcy Court does not indicate that the Bankruptcy Court recommends either acceptance or rejection of the Plan.

The proposed Plan that accompanies this Disclosure Statement is attached hereto. The Bankruptcy Court has scheduled a hearing regarding confirmation of the Plan on _____, 2021 at _____ via Zoom (the "Confirmation Hearing"). All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

The date of the Confirmation Hearing may be adjourned from time to time without further notice. Any continuance of the Confirmation Hearing shall be announced at the Confirmation Hearing. Creditors of the Plan proponents who wish to vote on the Plan should review this Disclosure Statement and the Plan, complete the ballot furnished herewith and return the ballots to **Farsad Law Office, P.C., 1625 The Alameda, Suite 525, San Jose, CA 95126**. As a holder of a claim against the Debtor, your vote on the Plan applicable to your claim is

important. In order for the Plan to be confirmed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(a), the holders of at least two thirds in amount and more than one-half in number of each class of Claims must vote or be deemed to have voted for acceptance. If a sufficient number of votes for acceptance are not received, the Debtor may seek confirmation of the Plan pursuant to Code §1129(b). Provided the Bankruptcy Court finds that the Plan does not discriminate unfairly and is otherwise fair and equitable, confirmation pursuant to 11 U.S.C § 1129(b) could occur notwithstanding rejection by many holders of claims against the Debtor. If necessary, the Debtor may modify the Plan at or before the hearing on confirmation in order that confirmation pursuant to 11 U.S.C § 1129(b) may be obtained.

Even though a holder of a claim may choose not to vote or may vote against the Plan, the holder of such claim will be bound by the terms and treatment set forth in the Plan if it is confirmed by the Court. Allowance of a claim for voting purposes does not necessarily mean that the claim will be allowed for purposes of distribution under the Plan. The Debtor believes the proposed Plan should be confirmed by the Bankruptcy Court because the Plan meet the basic statutory requirements, does not discriminate unfairly, and is otherwise fair and equitable. The Debtor nevertheless hopes that creditors reviewing this Disclosure Statement will conclude that the Plan merits acceptance and will vote accordingly.

## II.    REPRESENTATIONS AND ADMONISHMENTS

The contents of this Disclosure Statement have been derived from Debtor's books and records, the entire Court File in this action including Debtor's Schedules and Statement of Financial Affairs, Proofs of Claim filed by creditors and pleadings filed with the Court and from information obtained directly from the Debtor. Though every effort has been made to ensure the accuracy of all information set forth in this Disclosure Statement, unless otherwise stated herein,

the information in this Disclosure Statement has not been audited or reviewed by any independent auditors or appraisers.

In order to fully understand how a Plan is confirmed, each individual creditor should check with his or her or its attorney and receive full advice on the inter-workings of Sections 506(a), 1111, 1122, 1124, and 1129 of the Code.

Any questions regarding this Disclosure Statement may be directed to Fremont Hill's counsel, FARSAD LAW OFFICE, P.C., 1625 The Alameda, Suite 525, San Jose, CA 95126; Telephone number: (408) 641-9966; email(s): farsadlaw1@gmail.com or nancy@farsadlaw.com.

### III.    BACKGROUND OF DEBTOR

### A.    <u>The Project</u>

This is a single asset real estate case consisting of a proposed, mixed use multifamily residential and retail development ["Project" as contemplated when construction is completed] of 297,790 square foot gross (252,662 square foot net rentable) on 12.62 acres in the Fremont foothills ["Property"] with frontage on Interstate 680.  The Project consists of four buildings (4 to 6 stories in height) with retail covering the podium parking with residential units on the upper floors. There are a total of 158 residential units (all at market rate); 53,900 square feet of retail, 171 on grade parking (covered) and 397 surface parking spaces. The residential units consist of one, two and three-bedroom units with an average unit size of 1258 square feet.

On confirmation, with financing that has already been arranged, Debtor intends to resume construction. The estimated cost of construction, at today's labor rates and material costs are estimated at $80,000,000.  Debtor projects that the time for construction is 18-24 months.

### B.    <u>History</u>

As many development projects of this size, the Property has a long and checkered history. In 2000, Joey Lo, the then owner of the Property obtained approval from the City of Fremont for

a 105,000 square foot shopping center on the 12-acre site. However, the cost of the proposed underground parking rendered the project infeasible. Hence, it sat dormant.

In 2004, Michael Luu, a local developer that was developing Sabercat Mansions and a senior housing project on Sabercat Road, collaborated and rebranded the Project as Sabercat Neighborhood Center. The project ran into fierce neighborhood opposition where 600 neighbors signed petitions against development of the project citing traffic congestion on Auto Mall Parkway, safety hazards due to earthquake faults and utility lines, and the inappropriateness of towering buildings in Fremont. The Planning Commission rejected the Project. In 2007, the City Council, in a 4-1 vote, overturned the Planning Commission paving the way for construction.

Then, in 2008, the economy began its precipitous decline. No financing was available for the Project. Joey Lo travelled overseas to secure EB5 financing. He sold the project to Fremont Hills Development Corporation on Oct. 8, 2014.

On or about January 28, 2018 FHDC Group LLC, a Delaware Limited Liability Corporation acquired 80% of Debtor's stock from the previous ownership group concurrent with the closing of the $65,000,000 construction loan by Parkview Financial and Trez Capital. The remaining 20% interest of the Debtor was transferred to Stoneridge Development Company. In or about December 28, 2018, FHDC Group LLC purchased the remaining 20% of the Debtor's stock under a stock purchase agreement from Stoneridge Development Company such that FHDC Group, LLC now owned 100% of Debtor's stock.

On or about January 31, 2019, FHDC Group LLC sold 100% of its stock to Gadsden Growth Properties Inc., a Maryland Corporation.

# IV.    ASSETS

This is a single asset real estate case. The primary asset is the Property. The Project is partially constructed. The following work has been completed:

1.    Permits
2.    Ground infrastructure (sewer, water and electricity)
3.    Foundation
4.    Exterior studs

However, the permits may have expired and the existing construction is subject to inspection for deterioration for being exposed to the elements.

In June 2019, Brian Rapela, MAI, MRICS and Melissa M. Downing, MAI of Joseph J. Blake & Associates, appraised the Property and opined that the value of the Property, as of Jan. 31, 2019, was $81,700,000, the fair value "as complete" was projected at $155,000,000 as of March 1, 2020 and the projected value "as stabilized" was projected as $164,000,000 as of Sept. 1, 2020. A true and correct copy of the June 27, 2019 appraisal summary is attached hereto as **Exhibit "1"**.

Debtor contends that since the June 2019 appraisal, the Property and market have changed, influenced by at the following factors: (1) the COVID-19 pandemic after which condominiums became disfavored over single-family residences; (2) a sharp increase in material costs and an increase in labor costs; (3) expiration of permits; (4) apprehension of the future condominium market; (5) condition of existing construction as to deterioration for being exposed to the elements.

On March 14, 2021, Melissa M. Downing, MAI of Joseph J. Blake and Associates, Inc., re-appraised the Property and opined that the "as is" market value of the fee simple estate as of March 10, 2021 is $24,800,000. The projected "as complete" market value is projected as $138,200,000 as of Sept. 1, 2022 and the prospective "as stabilized" market value of the fee simple estate is $148,800,000. A copy of the March 14, 2021 appraisal is attached as **Exhibit**

**"2"**. Notwithstanding the recent appraisal, Debtor values the Property at $37,000,000, an amount that is estimated to be sufficient to fully secure the principal of 2501 Cormack, LLC's lien[1].

Debtor's only other assets are as follows:

| Asset | Value |
|---|---|
| East West Bank checking | 1,077 |
| Deposit for Office Space (2051 Junction Ave. S.J.) | 2,000 |
| Office Furniture | 9,483.00 |
| Office Equipment | 2,500 |
| City of Fremont Cash Bond | 2,900,000[2] |
| | $2,915,060 |

## V.  LIABILIITES

### A.  Secured and Under-Secured Debt

The Project is encumbered by two consensual liens (deeds of trust), one disputed claim as to an equitable lien and numerous non-consensual liens (a property tax lien and numerous mechanic's liens). Since the priority of mechanic's liens date back to when work first commenced rather than the recordation date of the lien, and in many cases, Debtor is ignorant of the exact date that work begun, absent a court order establishing the relation back date, Debtor prioritized the mechanic's liens by the date the preliminary notice, if any, was served[3]. Debtor contends that the priority of all liens is as follows:

---

[1] This assumes that BAI does not prevail in its claim of an equitable lien.

[2] This cash bond is recoverable if replaced with a bond for a new contractor or if the project is completed and all city liabilities were paid.

[3] Debtor contends that except for the general contract, subcontractor and equipment supplier liens cannot date back to more than 20 days before the preliminary notice.

| Claimant | Type of Debt | Date of Lien | Date of service of pre-lien | Amount | Amt. Disputed |
|---|---|---|---|---|---|
| Alameda Co Tax Collector | Property Tax | 1st priority | Not applicable | 278,661.60 (FY 19/20 & 20/21) + $159,000 (FY before 19/20)[4] | N |
| Earth Systems Pacific, Inc. | Mechanic's lien | 10-23-19 | 5-1-17 (by Court order) | 71,300.30 | N |
| 2501 Cormack LLC | 1st Trust Deed | 2-9-2018 | Not applicable | 49,280,213.52 | Y |
| Queens Land Builder, Inc.[5] | Mechanic's lien | 10-8-19 | 3-19-2019 | 5,712,494.16 | Y |
| HD Supply | Mechanic's lien | 10-25-19 | 10-18-16 | 66,182.30 | N |
| Ahern | Mechanic's lien | 9-25-19 | Date unknown but work commenced July 2018 | 10,869.24 | N |
| Dayton Superior | Mechanic's lien | 1-24-20 | 3-1-19 served 3-7-19 | 4,045,811.36 | Y |
| Sunbelt Rentals, Inc. | Mechanic's lien | 10-24-19 | 3-7-19 | 60,617.89 | N |
| Grand Ocean Holdings, Inc. | Junior Trust Deed | 9-26-2019 | | 2,000,000 | Y |
| Finnco Services | Mechanic's Lien | 4-3-2020 | No known pre-lien | 175,033.15 | N |
| **Total** | | | | **61,701,183.52** | |

A more detailed description of some of the liens follows:

1.  <u>Alameda County Tax Collector</u>

       1st and 2nd installment of 2019-2020 property taxes   $120,804.72
       Delinquent penalty        $ 12,080.46
       Costs       $    10.00

---

[4] Alameda County Tax Collector filed two claims (POC 5 and POC 6) which will be treated as a single claim
[5] Queens Land Builder, Inc. was the direct contractor and entered into a contract with debtor executed on 9-3-2016. The contract date is used to establish priority.

|                                                              |              |
| ------------------------------------------------------------ | ------------ |
| Redemption penalties                                         | $ 14,496.56  |
| State redemption fee                                         | $     15.00  |
| Sub-total                                                    | $147,406.74  |
| 1st and 2nd installment of 2020-2021 property taxes          | $131,254.86  |
| Sub-total                                                    | $278,661.60  |
| Pre- Fiscal Year 2019-2020 delinquent property taxes         | $159,000.00  |
| **TOTAL**                                                    | **$437,661.60** |

2.      2501 Cormack, LLC (Lender)

Parkview Financial Fund 2015, LP (Parkview) and Trez Capital (2016) Corporation, as nominee on behalf of certain entities managed by it (Trez), collectively "Original Lenders" extended a loan ("Loan") pursuant to a certain Construction Loan Agreement dated Jan. 31, 2018 ("Loan Agreement") with Debtor.  Debtor executed two notes: (1) a note secured by a deed of trust dated Jan. 31, 2018 in the original amount of $32,500,000 in favor of Parkview and (2) a note, secured by a deed of trust dated Jan. 31, 2018 in favor of Trez.  The Loan is secured by a first priority deed of trust on the Property recorded in the Official Records on Feb. 9, 2018 as Instrument No. 2018031447. The Debtor granted the Original Lenders a security interest in all the Debtor's real and personal property assets. Original Lenders perfected their security interest in the Debtor's personal property assets by filing a UCC Financing Statement with the California Secretary of State as Document No. 88714550002.

Subsequently, the Original Lenders assigned their rights, title and interest in the loan documents, notes and deed of trust to 2501 Cormack, LLC. The Assignment of Deed of Trust dated Oct. 7, 2020 was recorded in the official records of the County of Alameda, California on Nov. 4, 2020.  2501 Cormack, LLC, pursuant to its POC No. 9-1 filed in the herein case on June 22, 2021, asserts that it is owed $49,280,213.52 exclusive of interest as follows:

$39,794,788.47  Principal
$ 5,755,769.04  Interest
$ 3,729,656.01  Default Interest

Such amounts are without legal fees due pursuant to the Loan Documents, including fees incurred by the Lender relating to this and a prior bankruptcy and foreclosure proceedings.

Case: 21-50240     Doc# 76     Filed: 07/15/21     Entered: 07/15/21 16:23:02     Page 10 of 31

3.    Details re: Mechanics Lien Claimants

Set forth as **Exhibit "3"** is a spreadsheet detailing out the procedural background as to each mechanic's lien that asserts a perfected security interest in Debtor's Property. However, with respect to some of these mechanic's liens, Debtor may take the following actions:

a.    Lack of information as to date of service of pre-lien, if any

The following lenders, though their complaint alleges compliance with California Civil Code Section 8400, have failed to attach a copy of their pre-lien to the complaint:

Finnco
Earth Systems Pacific
Ahern Rentals

Further, Finnco Services, Inc. filed an adversary complaint on June 22, 2021 against Debtor and other lien claimants asserting that its lien dates back to the date of commencement of work and such commencement was before the recordation of the 2501 Cormack, LLC trust deed. Interestingly, nowhere in its adversary complaint does it allege that it recorded a preliminary lien. Debtor contends that Finnco was not the general contractor and hence its lien rights date back to the date of commencement of work, but no earlier than 20 days before any preliminary lien notice.  The Proof of Claim does not attach a preliminary lien notice either. Except for Earth Systems Pacific, whose priority was established by Court order, Debtor will continue to search its records for a pre-lien, ask that the mechanics' lien claimants produce a copy of the pre-lien together with the proof of service, and request a copy of the pre-lien from 2501 Cormack, LLC, which should have been served with a copy.  In the event the priority of the Mechanic's lien is different than as set forth herein, Debtor will amend as necessary and appropriate.[6]

b.    Sunbelt Rentals, Inc.

---

[6] Debtor contends that all these liens are under-secured. All these claimants are treated equally. Hence the priority of their liens may not matter.

Case: 21-50240    Doc# 76    Filed: 07/15/21    Entered: 07/15/21 16:23:02    Page 11 of 31

Debtor filed the herein petition on Feb. 24, 2021 and scheduled Sunbelt Rentals, Inc. Notwithstanding the automatic stay under 11 USC § 362, Sunbelt Rentals, Inc. proceeded to obtain a default and default judgment against Debtor. Debtor contends that the default and judgment are void. In re Schwartz 954 F.2d 569 (9th Cir. 1992).

      c.   PJ's Lumber, Inc. DBA PJ's Rebar, Inc.

PJ's Rebar, Inc. filed a pre-lien on March 30, 2018 and a mechanic's lien on Nov. 14, 2019. It timely brought a complaint to perfect its mechanic's lien on Nov. 14, 2019. However, on Feb. 22, 2019 it submitted a Request for Dismissal without prejudice. The dismissal was entered on March 1, 2021. Debtor contends that although PJ's Rebar, Inc. may file a new complaint to liquidate its debt, any such a re-filed complaint would not be timely as to perfecting its mechanic's lien. Hence PJ's Rebar, Inc. is treated as a general unsecured creditor.

**B.**   **General Unsecured Creditors**

    **1.**     **Unperfected Mechanics Liens**

| Claimant | Type of Debt | Date of Lien | Amount | Status |
|---|---|---|---|---|
| Pr-Vigil, Inc. | Mechanic's Lien | 7-2-2019 | 23,396.82 | Unperfected (no complaint filed) |
| Cemex Const. Materials Pacific LLC | Mechanic's Lien | 9-18-2019 | 194,117.49 | Not perfected (no complaint filed) |
| Jesus O. Vegara | Mechanic's Lien | 11-1-2019 | 9,063.00 | Not perfected (no complaint filed) |
| PJ's Lumber, Inc. DBA PJ's Rebar, Inc. | Mechanic's lien | 11-14-2019 | 86,570.45 | Not perfected (complaint to perfect dismissed) |
| United Site Services | Mechanic's Lien | 1-7-2020 | 39,000 | Not perfected (No complaint filed) |
| Scott Development | Mechanic's Lien | 12-16-2020 | 436,799.83 | Filing of lien during pending |

| | | | | BK permitted under 362(b)(3) and perfection permitted under 546(b)(2) but no action to perfect taken. No complaint filed |
|---|---|---|---|---|
| Dayton Superior Corp. | | | 300,000 | |
| TOTAL | | | 1,088,947.59 | |

Debtor contends that these creditors were not stayed to perfect their mechanic's lien rights and the filing of the bankruptcy (and the prior bankruptcy) did not toll the running of the statute. Bankruptcy Code Section 362(b)(3) allows the recording of a mechanics lien after the filing the bankruptcy petition, and permits a mechanic's lien claimant to take additional steps to perfect its mechanic's lien by filing notice with the Bankruptcy Court under Section 546(b)(2).

Debtor further concedes that CRC Emergency Rule 9 effective April 6, 2020 tolled the statute of limitations to file a complaint to perfect a lien until August 3, 2020. However, it appears that none of the above creditors (except PJ' Rebar, Inc.) filed a complaint and the tolling is no longer applicable.

### 2. Bay Area Investment Fund, LLC (BAI) $41,913,787.24 (Disputed)

Debtor and BAI entered into a loan agreement dated Jan. 1, 2015 and a note of the same date ("Note") in the original amount of $40,000,000. Pursuant to its terms, the Note accrued interest from the advancement date at 2% per annum and matured on May 31, 2020, subject to rights of extension. The Note was signed by Xu Zhong but his title was omitted from the signature block of the note. The loan agreement was signed by Xu Zhong as shareholder. The

loan documents contain an exculpation clause which provides that that the "primary bank loan has priority on any proceeds from the sale of the property" and whereby the lender acknowledges that it cannot seek a personal judgment or recovery from the owners of the property.

No security agreement was ever recorded. BAI asserts that it has an equitable lien senior to the recorded lien of 2501 Cormack, LLC and is in pending litigation with 2501 Cormack, LLC. Debtor disagrees that BAI is secured and treats it as a Class 6 Creditor in the Plan. The Disclosure Statement and Plan, however, also provide for the treatment of BAI if it establishes by court order that its lien is senior to 2501 Cormack, LLC. (Note: as Debtor takes the position that BAI is unsecured based on no recorded instrument to that effect, Debtor plans to file a Motion for Summary Judgment re: its Adversary Case (case number 21-05011) that was filed on April 9, 2021 before Plan confirmation.)

3. <u>**Other Unsecured Liabilities**</u>

| Claimant | Amount | Description | Disputed | Basis |
|----------|--------|-------------|----------|-------|
| MVE, Inc. dba Mid-Valley Engineering | 9,414.00 | Special inspections of construction site | N | |
| Pace Supply Corp. | 140,558.00 | Building Material Supplier | N | |
| Peninsula Crane & Rigging | 60,000 | Supplier of Mobile Crane | N | |
| Jason Woo | 11,000 | Construction procurement | N | |
| Morgan Real Estate and Financial | 21,600 | Office rent | N | |
| SDC Companies | 501,800 | Project management | N | |
| HUB Construction | 0 | Alameda Co. Superior Ct. HG19033474 dismissed with prejudice 10-3-2019 | N | |
| Pete Jason Quintana | Per proof at trial | Injured worker alleging Debtor failed to maintain a | Y | |

| | | | | |
|---|---|---|---|---|
| | | reasonably safe site and for negligent supervision. Complaint filed on 10-15-2020 in Alameda Co. Superior Court as Case No. HG20077560; Void under Schwartz as stay violation; amended complaint filed 3-26-2021 as further stay violation | | |
| Chun Lu & Min Yi Lai | 50,000 | Claim for refund; Filed in Santa Clara Co. Superior Court as Case No. 20CV369925. Served on 10-15-20 in violation of stay; Default judgment submitted 1-11-2021 in violation of stay and void,. | N | |
| Pohing Chan | 50,000 | Claim for refund; Filed in Santa Clara Co. Superior Court as Case No. 20CV369927. Served on 10-15-20 in violation of stay; | N | |
| Art Alger, Inc. | 13,435.00 | | N | |
| Finnco Services | 184,713.75 | Unsecured part of Secured Claim | N | POC 1 |
| City of Fremont | 2,920,000 | Appears to have been filed in case $2.9M bond is insufficient to pay for City of Fremont obligations incurred or incase cash bond is clawed back | Y | POC 7 |
| U.S. Bank DBA Elan Financial Services | 23,114.05 | | N | |
| United States Trustee | 650.00 | UST fees in prior case | N | POC2 |
| TOTAL | 3,986,284.80 | | | |

| Class | Claimant | Amount | Post-pet. Int. rate/Post conf. int...rate | Est Amt. due on Confirmation[7] | Estimated amt. due 120 days after Effective Date (Payoff Date)[8] |
|---|---|---|---|---|---|
| 1 | Alameda Co. Tax Collector | 437,661.60 | 18.00%/18.00% | $516,440 | $542,699.70 |
| 2a | Earth Systems Pacific | 71,300.30 | 10.00%/10.00% | $78,609 | $80,807.07 |
| 2b | 2501 Cormack, LLC | 49,280,213.52 which represents 39,794,788.47 in principal plus accrued interest | 0%/10.49% | 49,280,213.52 | 37,618,449[9] |
| 2c | Bay Area Investment Fund, LLC (BAI) | 41,913,787.24 | 0.00%/ 2.00% | 41,913,787.24 | 36,726,783[10] |
| 2d | Finnco | 175,033.15 | 10.00%/10.00% | 192,536.47 | 198,370.91 |

**C.**   <u>**Priority Claims**</u>

The Internal Revenue Service filed a priority claim for $600.00.

**VI.  CLASSIFICATION OF CLAIMS AND INTERESTS
AND PLAN TREATMENT**

**A.**   <u>**Debtor to Strip Lien to Value of the Real Property Collateral and Pay the Secured Amount in Full within 120 Days of the Effective Date**</u>

The following claimants are (or contend that they are) fully or partially secured.

---

[7] Only if claim is over-secured. Projects 12 months to confirmation.
[8] Assumes claim is adjudicated as secured.
[9] Assumes only Alameda Co. Tax Collector and Earth Systems Pacific are senior lien claimants.
[10] Assumes only Alameda Co. Tax Collector has a senior lien.

Debtor's Disclosure Statement Dated July 14, 2021 - 16

The priority of the Alameda Co. Tax Collector lien does not appear to be disputed. Finnco asserts that it has a lien which is superior to 2501 Cormack, LLC and that BAI has no lien. Debtor disagrees that Finnco has a senior lien but agrees that BAI has no lien. BAI contends that it has an equitable lien which gives it lien rights senior to 2501 Cormack, LLC, Finnco and to Earth Systems Pacific. Debtor disagrees.

Based on its appraisal, Debtor opines that the real property collateral is worth $37,000,000. Hence, the amount of any unsecured / under-secured obligation is estimated as follows:

Scenario 1:     Debtor's contention

| Priority | Creditor | Claim | Amt. Secured | Amt. Unsecured |
|---|---|---|---|---|
| 1 | Alameda Co. Tax Collector | 516,440 | 516,440 | |
| 2 | Earth Systems, Inc. | 78,609 | 78,609 | |
|  | Subtotal | | 595,049 | |
| 3 | 2501 Cormack, LLC | 49,280,213 | 36,404,952 | 12,875,263 |
| 4 | BAI | 41,913,787 | | 41,913,787 |
| 5 | Finnco | 175,033 | | 175,033 |

Scenario 2 – BAI's Contention

| Priority | Creditor | Claim | Amt. Secured | Amt. Unsecured |
|---|---|---|---|---|
| 1 | Alameda Co. Tax Collector | 516,440 | 516,440 | |
|  | Subtotal | | 516,440 | |
| 2 | BAI | 41,913,787 | 36,483,560 | 5,430,227 |
| 3 | Earth Systems, Inc. | 78,609 | 0 | 78,609 |
| 4 | 2501 Cormack, LLC | 49,280,213 | 0 | 49,280,213 |
| 5 | Finnco | 175,033 | 0 | 175,033 |

Scenario 3:     Finnco Contention

| Priority | Creditor | Claim | Amt. Secured | Amt. Unsecured |
|---|---|---|---|---|
| 1 | Alameda Co. Tax Collector | 516,440 | 516,440 | 0 |
| 2 | Earth Systems, Inc. | 78,609 | 78,609 | 0 |

Case: 21-50240   Doc# 76   Filed: 07/15/21   Entered: 07/15/21 16:23:02   Page 17 of 31

| | | | | |
|---|---|---|---|---|
| 3 | Finnco | 175,033 | 175,033 | 0 |
| | Subtotal | | 770,082 | |
| 4 | 2501 Cormack, LLC | 49,280,213 | 36,229,918 | 13,050,295 |
| 5 | BAI | 41,913,787 | | 41,913,787 |

Debtor will pay the allowed secured claims in order of priority, as these may be adjudicated or resolved by stipulation, up to the value of the creditors' real property collateral. The allowed unsecured or under-secured balance, if any shall be paid as a Class 6 Claim (as to 2501 Cormack, LLC and BAI) or a Class 5 claim (as to Finnco and Earth Systems Pacific).

These allowed secured claims will be paid together with post-petition interest if the claim is over-secured secured and with post-confirmation interest (to the extent of a secured claim) as set forth in the table above, in a single lump sum payment due within 120 days of the Effective Date of the Plan. There shall be no interim monthly payments. Creditors in these classes shall retain their interest in the collateral until fully paid.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. **These creditors, if found to be partially secured, are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against their collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**B.** **Debtor to Strip Lien to Value of the Personal Property Collateral and Pay the Secured Amount in Full within 120 Days of the Effective Date**

**Class 3 – 2501 Cormack, LLC**

As to 2501 Cormack, LLC only, in addition to its claim as a Class 2b claimant, it also has a security interest in personal property pursuant to its UCC-1. In addition to any payment

that 2501 Cormack, Inc. is entitled to as to any security interest in real property, it shall be paid $13,060 without interest for its security interest in personal property. Such amount shall be paid in a single lump sum payment due within 120 days of the Effective Date of the Plan. There shall be no interim monthly payments.

The Class 3 claimant shall retain its interest in the collateral until fully paid. The Class 3 claimant may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. **The Class 3 Creditor is impaired and is entitled to vote on confirmation of the Plan.** The Class 3 Creditor's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

## C. Debtor to strip off lien and pay as a Class 8 General Unsecured Creditor

| Class | Name of Creditor | Collateral | Amount Due |
|-------|------------------|------------|------------|
| 4 | Grand Ocean Holdings | 2501 Cormack Rd., Fremont, CA | 2,000,000 |

Prior to confirmation, Debtor will obtain an order or stipulation fixing the secured amount of the Class 4 claim at zero. Debtor will pay nothing to the Class 4 creditor as a secured claim. The Class 4 claim whose lien is stripped is treated as a Class 8 General Unsecured Creditor. On entry of an order or stipulation valuing its lien at zero, Grand Ocean Holdings' lien shall be void for all purposes conditioned only on Debtor obtaining a discharge or completing all payments under the confirmed plan. The Class 4 claimant shall retain its interest in the collateral until discharge but is prohibited from taking any collection action against the collateral.

The Class 4 Creditor may not repossess or dispose of its collateral so long as Debtor is not in material default under the Plan. On entry of discharge or completion of plan payments, Debtor may apply for a final order valuing Grand Ocean Holding's' lien at zero under 11 U.S.C. §506 and FRBP 3012 on 7 day notice to Grand Ocean Holdings and opportunity for hearing.

**This secured claim is impaired and is entitled to vote on confirmation of the Plan.**

**D.**      **Debtor to Strip off Lien and at the Election of each Class 5 claimant, pay it as either a Class 7 or Class 8 Creditor**

| Class | Name of Creditor | Collateral | Amount Due |
|---|---|---|---|
| 5a | Ahern Rentals | 2501 Cormack Rd., Fremont, CA | 10,869.24 |
| 5b | Queens Land Builder, Inc. | 2501 Cormack Rd., Fremont, CA | 5,712,494.16 |
| 5c | HD Supply | 2501 Cormack Rd., Fremont, CA | 66,182.30 |
| 5d | Dayton Superior | 2501 Cormack Rd., Fremont, CA | 2,792,677.36 |
| 5e | Sunbelt Rentals, Inc. | 2501 Cormack Rd., Fremont, CA | 60,617.89 |
| 5f | Finnco (only if it is not adjudicated fully secured) | 2501 Cormack Rd., Fremont, CA | 175,033.15 |
| SUB-TOTAL | | | 8,817,874.10 |
| 5g | Earth Systems Pacific (Only if BAI creditor is adjudicated as having a lien) | 2501 Cormack Rd. Fremont, CA | 71,300.30 |
| TOTAL | | | 8,889,174.40 |
| | | | |

Prior to confirmation, Debtor will obtain an order(s) or stipulation(s) fixing the secured amount of the above creditors' claims at zero. Debtor will pay nothing to those creditors as secured claims. Any Eligible Class 5 claimant whose lien is stripped may elect to be treated either as a Class 7 Claimant (Class 7 Election) or it will be treated as a Class 8 Claimant. It shall make this election concurrent with the casting of its ballot. If no election is timely made, if the Class 5 creditor becomes ineligible to be a Class 7 claimant or if it fails to cast a ballot, its allowed claim shall be treated as a Class 8 claimant.

The Class 5 claimants shall retain their interest in the collateral until entry of a Final

Order voiding its lien, or stipulation of the Class 5 Claimant with Debtor, but are prohibited from taking any collection action against their collateral. Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan. On entry of discharge or completion of plan payments, Debtor may apply for a final order voiding lien pursuant to 11 U.S.C. §506 and FRBP 3012 on 7-day notice to the Class 5 Claimant and opportunity for hearing. **These secured claims are impaired and are entitled to vote on confirmation of the Plan, but as a Class 7 or Class 8 Creditor.**

**E.     Class 6: Bay Area Investment Fund and 2501 Cormack, LLC**

The allowed amount of the unsecured or under-secured Bay Area Investment Fund, LLC (BAI) claim, and the allowed amount of the unsecured or under-secured part of the 2501 Cormack, Inc. real property claim (Claim 2b) claim shall be treated as a Class 6 claim. These claimants shall be paid 7% of their allowed claim without interest in 18 equal monthly payments commencing on the first day of the 6th month after the Project Completion Date.

**Class 6 claimants are impaired and are entitled to vote on confirmation of the Plan.**

**F.     Class 6:  Eligible Class 5 Claimants which elect to treat their allowed under-secured claim as a Class 7 claim**

Any Eligible Class 5 Claimant which make a timely Class 7 Election shall receive 50% of its allowed claim payable without interest in 18 equal monthly payments commencing on the first day of the 6th month after the Project Completion Date.

If a Class 5 claimant makes its election to be treated as a Class 7 claimant (and thereby agrees to continue to render services or provide materials), and Debtor later declines to use the Class 5 claimant's services, it shall retain its rights to be paid as a Class 7 creditor. Any Eligible

Class 5 Claimant that becomes ineligible shall have its allowed claim reclassified as a Class 8 general unsecured creditor. **Class 6 claimants are impaired and are entitled to vote on confirmation of the Plan.**

**G.  Class 8: Other General Unsecured Creditors**

The allowed claims of general unsecured creditors (including any allowed presently unknown claims of creditors whose executory contracts are being rejected under this Plan) shall receive a pro-rata share of a fund of $500,000 payable without interest in 18 equal monthly payments commencing on the first day of the month that is 180 days from the Project Completion Date. **These Class 8 creditors are impaired and are entitled to vote.**

**H.  Class 9: Equity Security Holders**

The holders of the stock in Debtor shall retain their interest as that interest is set forth in the books and records of the Debtor on the date of confirmation. **Equity Security Holders are not entitled to Vote on the Plan.**

**I.  Professional Fees.** The plan proposes to pay the following professionals from available cash on the Effective Date subject to prior approval from the Bankruptcy Court.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Farsad Law Offices | $200,000 |

Professionals may not take collection action against Debtor so long as Debtor is not in Material Default under the Plan. **Estate professionals are not entitled to vote on confirmation of the Plan.**

**J.**     <u>**Priority claims**</u>

(a)  <u>Tax Claims</u>.  Debtor will pay the allowed claim of the Internal Revenue Service entitled to priority under section 507(a)(8) in full together with post-petition accrued interest at the rate of 4% per annum, on the Effective Date. The IRS filed a claim for $600.00. Debtor estimates that it will be paid $624 on the Effective Date.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan. **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

**K.**        <u>**Other Administrative Claims.**</u>  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable. Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in Material Default under the Plan (defined below). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

**L.**     <u>**Executory Contracts.**</u> There are no known executory contracts.  Any leases or executory contracts that are not assumed are deemed rejected on confirmation.

## VII.    POST-PETITION STATUS OF THE DEBTOR AND THE CASE
### <u>Financial Condition of the Debtor and Plan Feasibility</u>

**A.**     **Post –Petition Events**

1.     <u>Motion for Relief from Stay</u>

Secured Creditor 2501 Cormack, LLC filed an emergency motion to dismiss the bankruptcy case. In its motion, it argues that this is Debtor's second bankruptcy and in the first bankruptcy, it stipulated to relief from stay "for all purposes". It then argues that the filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy code.

Debtor's position was that dismissal requires notice pursuant to FRBP 2002(a)(4) or an order shortening time. Hence the motion was procedurally incorrect. Regardless, the parties entered into a stipulation whereby Debtor would make adequate protection payments. A true and correct copy of the stipulation is attached hereto as **Exhibit "4"**.

2.    <u>Adversary Proceeding or Motions to Value Collateral</u>

Absent stipulation, Debtor will bring a motion to value or adversary complaint to value the liens of the following creditors at zero:

a.    Finnco
b.    HD Supply
c.    PJ's Rebar (if it contends that it has a perfected lien)
d.    Queens Land Builder, Inc.
e.    Dayton Superior
f.    Ahern Rentals
g.    Sunbelt Rentals
h.    Grand Ocean Holdings, Inc.

3.    <u>Adversary Proceeding for Declaratory Relief</u>

Debtor will continue to prosecute the current adversary proceeding seeking declaratory relief as to Bay Area Investments, Inc. (case number 21-05011.)

## VIII.   LIQUIDATION ANALYSIS AND DISTRIBUTIONS TO GENERAL UNSECURED CREDITORS

### Distribution to General Unsecured Creditors

In liquidation, general unsecured creditors would receive no distribution. Debtor's liquidation analysis is attached as **Exhibit "5"**.

In a Chapter 7 "Asset Case" assets are normally sold by the Chapter 7 Trustee. Secured creditors are paid first from the proceeds of sale relating to assets on which those secured creditors have a valid lien. Thereafter, unsecured creditors are paid according to the rules of priority set forth in the Bankruptcy Code. Unsecured creditors of the same priority share pro-rata based on the amount of their allowed claim relative to the total amount of unsecured claims of the same priority.

The amount general unsecured creditors will receive under the plan depends on whether the Class 5 creditors elect to be treated as Class 7 creditor or Class 8 creditors. If all Class 5 creditors elect to be treated as Class 7 creditors, the approximate distribution to general unsecured creditors is set forth in Exhibit 6. If none of the Class 5 creditors elect to be treated as Class 7 creditors, the estimated distribution is set forth in Exhibit 7

### IX. PRE-PETITION LITIGATION, CLAIMS AGAINST OTHERS

In addition to the complaints filed to perfect mechanics liens (which are set forth above), the following state court complaints were filed before the commencement of the herein case.

| Plaintiff | County Complaint Filed | Case No. | Date Filed | Status |
|---|---|---|---|---|
| HUB Construction | Alameda | HG19033474 | 8-29-2019 | Dismissed with prejudice 10-3-2019 |
| Quintana | Alameda | HG20077560 | 10-15-2020 | Void- stay violation; Pending |
| Chun Lu & Min Yi | Santa Clara | 20CV369925 | 8-26-2020 | Default judgment submitted 1-11- |

| | | | | 2021; Stay Violation |
|---|---|---|---|---|
| Pohing Chan | Santa Clara | 20CV369927 | 8/26/2020 | Default judgment submitted 1-11-2021; Stay violation |

## X.   TAX CONSEQUENCES

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THIS PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. DEBTOR AND THEIR COUNSEL MAKE NO REPRESENTATIONS REGARDING SUCH MATTERS AND ASSUME NO RESPONSIBILITY FOR SUCH MATTERS.

## XI.   MEANS OF IMPLEMENTATION

A.   **Nirvana's Acquisition of Debtor's stock**

All of the outstanding stock in Debtor is owned by Gadsden Growth Properties, L.P.  The general partner is Gadsden Growth Properties, Inc. Debtor has identified Nirvana Property Group, LLC ("Nirvana") which has agreed to acquire 100% of stock in the Debtor for $300,000 payable in payments.  A true and correct copy of the Stock Purchase Agreement is attached hereto as **Exhibit "9"**. Debtor will bring a motion authorizing the sale of the stock. Nirvana, through its own funds and through its lender contacts, is able to fund the plan as follows:

1.      Nirvana has and agrees to continue to fund Debtor such that Debtor is able to make the adequate protection payments to 2501 Cormack, LLC.  Payments were made as follows:

·     March 15, 2021          $100,000
·     April 15, 2021           $150,000
·     May 15,, 2021           $150,000
·     June 15, 2021           $150,000

2.      Nirvana shall pay when due all post-petition Property taxes for the Property, and shall remain post-petition current on such taxes.

3.      Nirvana, within 7 days of the execution of a Stock Purchase Agreement will ensure reasonable security and protection of the Property site, including reasonable perimeter fencing and appropriate monitoring of the site.

4.      Nirvana, upon approval of a Stock Purchase Agreement, shall cooperate, facilitate and allow Dayton and/or other contractors acting at Dayton's direction to enter the Property and remove the Dayton Equipment where it is safe and feasible without creating go-forward damage or an unsafe environment.

5.      Nirvana, with its own capital or through a lender that it identifies, shall fund the Plan to retire fully secured lenders per the terms of the Plan.

6.      Nirvana shall pay for any and all appraisals or valuation needed to support the Chapter 11 Reorganization plan.

7.      Nirvana Agrees to fund Debtor's legal fees.

8.      Nirvana shall commence and procure a loan commitment for take-out and construction financing with the International Brotherhood of Electrical Union or other qualified lenders ("New Loan") to support the Chapter 11 Reorganization Plan

9.      Nirvana shall commence and procure a general construction contract  to support the Chapter 11 Reorganization Plan

**B**.      **Term Sheets**

Hall Structured Finance has submitted a Term sheet which contemplates making a loan to Debtor in the amount that is the lesser of (1) 63% of the approved construction costs; (2) 100,000,000; or (3) 58% of the appraised value of the Property on an as completed basis ($138,200,000 per recent Blake appraisal).  The loan would be secured by a 1st position mortgage lien on the Property. It is contingent on the Debtor having $60,000,000 in equity or cash contributions.

The $60,000,000 in equity contribution would include the land value of about $17,000,000, outside financing in the amount of $30,000,000 from Greenworks Lending, the $2,900,000 City of Fremont cash deposit in lieu of bond and additional cash contributions brought in by Nirvana. Copies of the term sheets are attached hereto collectively marked as **Exhibit 8**.

## XII    CONFIRMATION OF THE PLAN

### A. Acceptance

The Bankruptcy Code defines acceptance by a class of Claims as acceptance by holders of two-thirds in dollar amount and a majority in number of Claims of that class.  However, only the votes of those Claimants who actually vote to accept or to reject the Plan are counted for this purpose. Classes of Claims not "impaired" under a Plan are deemed to have accepted the Plan. A Class is "impaired" if the legal, equitable or contractual rights attaching to the Claims of that Class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash.

### B.  Vesting

If the Plan is confirmed, on the Effective Date, all property of the estate shall vest in the Reorganized Debtor pursuant to 11 U.S.C. § 1141 (b), provided that the vesting of said property shall be without prejudice and shall not act as a bar to any post-confirmation motion to convert this case to one under Chapter 7 of Title 11 by the United States Trustee or any other party in interest on any appropriate grounds, and upon the granting of such motions the Plan shall terminate and the Chapter 7 estate shall consist of all remaining property of the Chapter 11 estate not already administered.

### C.  Discharge

The confirmation of the Plan discharges the debtor from any debt that arose before the date of confirmation whether or not a proof of claim was filed, such claim is allowed under 11

Case: 21-50240    Doc# 76    Filed: 07/15/21    Entered: 07/15/21 16:23:02    Page 28 of 31

USC §502 or the holder of such claim has accepted the plan. 11 U.S.C. §1141(d)(1)(A).

## XIII.  POST-CONFIRMATION

### A. <u>Objections to Claim</u>

The Debtor will be responsible for objecting to the allowance of claims.  All objections shall be filed and served not later than 60 days following the date of confirmation of the Plan.

### B. Definitions:  Default and Remedies

1.  <u>Effective Date</u>. The Effective Date of the Plan is defined as 30 days after entry of the Order Confirming Plan.

2.  <u>Eligible Class 7 Claimant</u>.  An "Eligible Class 7 Claimant" is one which meets all of the following criteria:

    a.    If the claimant renders services for which a license is required, as of the deadline for ballots to be cast, its license is current and in good standing with any and all licensing agencies.

    b.    the Claimant agrees to render post-confirmation services to Debtor or agrees to supply construction materials to debtor post-confirmation.

    c.    the Claimant agrees to provide post-confirmation services or supply construction materials  post-confirmation at a price which is the lower of (i) its Prevailing Rates and Prices or (ii) 5% over any other outside arms-length bid obtained by the Debtor for like services or construction materials;

    d.    in the event the Claimant makes a timely Class 7 election, but subsequently refuses to provide services or construction materials as set forth in section "c" above, it shall be re-classified as a Class 8 general unsecured creditor.

If a Class 5 claimant makes its election to be treated as a Class 7 claimant (and thereby agrees to continue to render services or provide materials under the terms set forth herein), and Debtor later declines to use the Class 5 claimant's services, the Class 5 Claimant shall retain its rights to be paid as a Class 7 creditor.

3. <u>Material Default Defined</u>.

If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

4. <u>Prevailing Rates and Costs</u>. Prevailing Rates and Costs means a price no higher than the Creditor, within the last 90 days, offered to render services or sell materials to any other customer.

5. <u>Project Completion Date</u>. The Project Completion Date is the earlier of the date of the issuance of a Notice of Completion by the City of Fremont Building Department, or if no such notice is issued, the earlier of the date escrow closes on the first residential or commercial condominium unit within the Project, or the date the first residential or commercial condominium unit is rented.

6. <u>Remedies upon Material Default</u>.

Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

Case: 21-50240    Doc# 76    Filed: 07/15/21    Entered: 07/15/21 16:23:02    Page 30 of 31

Dated: July 15, 2021          FREMONT HILLS DEVELOPMENT CORPORATION

By:      /s/ Jae Ryu
Designated Responsible Individual

Dated: July 15, 2021

FARSAD LAW OFFICE, P.C.


By: /s/ Nancy Weng
Nancy Weng
Attorney for Debtor Fremont Hills
Development Corporation