1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                                -oOo-

4    In Re:                        ) Case No. 21-50240
                                   ) Chapter 11
5    FREMONT HILLS DEVELOPMENT      )
     CORPORATION                    ) San Jose, California
6                                   ) Tuesday, February 1, 2022
                         Debtor.    ) 2:00 PM
7    _____ )
                                      MOTION TO CONVERT OR DISMISS
8                                     CASE PURSUANT TO 1112(B) AND
                                      FRBP 1017(F) AND 9014 FILED
9                                     BY U.S. TRUSTEE OFFICE (140)

10                        TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE STEPHEN L. JOHNSON
11                  UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES (All present by video or telephone):
     For the Debtor:             NANCY WANG WENG, ESQ.
13                               Farsad Law Office, P.C.
                                 1625 The Alameda
14                               Suite 525
                                 San Jose, CA 95126
15                               (408)641-9946

16   For 2501 Cormack, LLC:      ORI KATZ, ESQ.
                                 Sheppard Mullin
17                               Four Embarcadero Center
                                 Seventeenth Floor
18                               San Francisco, CA 94111
                                 (415)434-9100

19
     For Bay Area Investment     BRUCE B. KELSON, ESQ.
20   Fund I, LLC:                Schnader Harrison Segal & Lewis
                                 LLP
21                               650 California Street
                                 19th Floor
22                               San Francisco, CA 94108
                                 (415)364-6700

23

24

25

(973)406-2250 | operations@escribers.net | www.escribers.net

```
1   APPEARANCES (CONT'D):

2   Office of the United        JORGE A. GAITAN, ESQ.
    States Trustee:            U.S. Department of Justice
3                              501 I Street
                               Suite 7-500
4                              Sacramento, CA 95814
                               (916)930-2100
5
    For Individual Investors   JULIE BONNEL-ROGERS, ESQ.
6   of Bay Area Investment     Structure Law Group, LLP
    Fund I, LLC:               1754 Technology Drive
7                              Suite 135
                               San Jose, CA 95110
8                              (408)441-7500

9   For Queensland Builder,    RAYMOND AVER, ESQ.
    Inc.:                      Aver Law Firm
10                             10801 National Boulevard
                               Suite 100
11                             Los Angeles, CA 90064
                               (310)571-3511
12

13

14

15

16

17

18  Court Recorder:            LEO AYALA
                               United States Bankruptcy Court
19                             280 South First Street, Room 3035
                               San Jose, CA 95113-3099
20

21  Transcriber:               MICHAEL DRAKE
                               eScribers, LLC
22                             7227 N. 16th Street
                               Suite #207
23                             Phoenix, AZ 85020
                               (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

Fremont Hills Development Corporation

1

2          THE CLERK:  Line number five, Fremont Hills

3  Development Corporation.

4          MS. WENG:  Good afternoon, Your Honor.  Nancy Weng on

5  behalf of the debtor.

6          THE COURT:  Good afternoon, Ms. Weng.

7          MR. GAITAN:  Good afternoon, Your Honor.  Jorge Gaitan

8  on behalf of the United States trustee.

9          MR. KATZ:  Good afternoon, Your Honor.  Ori Katz

10  appearing on behalf of 2501 Cormac, LLC.

11          MR. KELSON:  Good afternoon, Your Honor.  Bruce Kelson

12  for Bay Area Investment Fund I, LLC.

13          MR. AVER:  Good afternoon, Your Honor.  Raymond Aver,

14  A-V-E-R, on behalf of  the secured mechanics lien claimant,

15  Queensland Builder, Inc.

16          MS. WENG:  And, Your Honor, I'm waiting --

17          THE COURT:  Waiting for who?

18          MS. WENG:  Ms. Bonnel-Rogers is slowly coming through.

19          THE COURT:  Okay.  You know what we're going to do?

20  I'm going to take the -- I need to grab -- this courtroom

21  computers not cooperating in a way.  So I need to walk back

22  into chambers for a second.

23          MS. WENG:  Okay.

24          THE COURT:  I'll be right back.

25          Folks, I'm going to take a break for just a minute.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Fremont Hills Development Corporation

1    We're not -- I'm going to walk back into chambers and grab

2    something.  The courtroom computer is not calling something up

3    that I need.

4        (Recess from 12:37 p.m., until 12:41 p.m.)

5            MS. WENG:  Mr. Bonnel-Roger, did you want to make your

6    appearance?

7            MS. BONNEL-ROGERS:  I'm sorry for the technical

8    difficulties.  Julie Bonnel-Rogers appearing as an observer on

9    behalf of the individual investors of the Bay Area Investment

10   Fund 1.

11           THE COURT:  No.  It's no problem is Bonnel-Rogers.

12   We're glad to have you.  And you're not the only one having

13   technical problems.  I can't get my computer to do something in

14   the courtrooms, have to wander around the courthouse looking

15   for things.

16           All right.  This is a motion to convert or dismiss by

17   the U.S. Trustee, which I've read.  I've seen the opposition.

18   Thoughts by maybe -- the U.S. Trustee, it's your motion.  So

19   Mr. Gaitan, you want to be heard first?  And then we'll hear

20   from Ms. Weng on her opposition.

21           MR. GAITAN:  Thank you, Your Honor.

22           Well, I think -- I think some papers speak for

23   themselves at this point.  I think that we've established that

24   under any objective view of the case, there's been a

25   substantial and a continuing loss of the debtor's assets.

Fremont Hills Development Corporation

1   Well, it has not (audio interference).

2         And none of the reasons stated in the opposition for

3   why the case should survive have come to fruition at this

4   point.  I think it was continued just to see if there was

5   anything left that the debtor could accomplish something in the

6   short time period.

7         And it was apparent from the most recent status

8   conference statement and term sheet attached to it is that the

9   debtor was not able to close the sale, that there -- it was

10  silent on the marketing of the buyback option.  And as far as

11  the term sheet, it suffered many and more of the failings that

12  the original disclosure statement to which our office also

13  objected had, including the problem, the big problem of

14  feasibility, the numerous monthly payments that debtor proposed

15  in the term sheet, which debtor itself cannot pay and will rely

16  on a third party to pay.  And as we had indicated in our prior

17  objection on that disclosure statement, there are little to no

18  details about that entity.

19        So from our perspective, this case should be

20  dismissed.  And there's nothing really more for the debtor to

21  accomplish.

22        THE COURT:  Okay.  Thank you, Mr. Gaitan.  And thanks

23  for the motion.

24        Ms. Weng, can I hear from you, please?

25        MS. WENG:  Yes, Your Honor.  I'd respectfully disagree

Fremont Hills Development Corporation

1   with that assessment.  The debtors actually accomplished a lot

2   in this case.  I know that things aren't on the docket every

3   single day, but I feel like everybody's been working on this

4   case every single day.  We had a very meaningful settlement

5   discussion with Mr. McDonald, who put a lot of effort into

6   settlement even after that one-day mediation.

7           And nobody could have predicted that Ms. Bonnel-

8   Rogers' client was going to do what they did, which was file a

9   state court complaint, complete with, I think that there's

10  an -- there might be an ex parte application for a restraining

11  order against Mr. Kelson's client from signing off on that

12  settlement agreement.

13          The settlement agreement, it kind of wraps up all the

14  claims.  And these things are changing day-by-day.  But

15  everybody has participated.  And I think just dismissing this

16  case and putting everyone back at square 1 is just very -- it's

17  very highly prejudicial not only to the estate but I think to

18  all the creditors as well.  It doesn't really do anybody any

19  favors.

20          We'd like to stay in the case and at least see through

21  the settlement agreement because I think it can be very

22  beneficial.

23          THE COURT:  Okay.  Why don't I give you my comments on

24  this and let you respond to those?

25          My inclination is to dismiss the case at this point.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Fremont Hills Development Corporation

1   So first, the legal standard under 1112(b)(1), when the Court

2   finds cause to convert or dismiss a case, the Court has to

3   decide which of those actions will best serve the estate's

4   creditors.  It must decide whether dismissal, conversion, or

5   the appointment of a trustee or examiner is in the best

6   interest of the estate and should identify whether there are

7   unusual circumstances that establish that dismissal or

8   conversion is not in the best interest of the estate.  That's

9   the Sullivan case 522 B.R. 6044.

10          It's a three-step process.  Step 1 is, is there cause

11  to convert or dismiss?  Step 2, if yes, are there unusual

12  circumstances that satisfy Section 1112(b)(2)?  And third, if

13  not, whether conversion or dismissal or the appointment of a

14  trustee is in the best interest of creditors in the estate.

15          So generally speaking, I would find cause to convert

16  the case.  The estate has no substantial cash or other assets

17  at this point.  It sold, and I use the word sold in quotations,

18  its principal asset to its largest secured creditor, which was

19  Cormack, with an option to repurchase.

20          The estate continues to accrue administrative

21  expenses, attorneys' fees, and U.S. Trustee fees without any

22  ability to pay them.  I conclude, as I did at the last hearing,

23  that this is a continuing diminishment of the estate's assets.

24  But because the debtor argued there's still a purpose to

25  reorganize, I ordered the debtor to file the outline of a plan.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Fremont Hills Development Corporation

1    Of the possible responses, none of them make sense to me to a

2    motion to convert.

3         First, the debtor says there is a plan funder who will

4    continue to make adequate protection payments to Cormack.

5    Nowhere in the documents do I find a cogent explanation for why

6    the debtor would pay Cormack on a loan for property it purports

7    to have sold to Cormack if -- and if the sale has -- if the

8    sale itself has not closed, it's way overdue.

9         The purported purchase back option has been much

10   discussed but has really come to nothing so far as I can tell.

11   So it seems pretty clear that no one is willing to pay for the

12   right to purchase the property back from Cormack.

13        I gave the debtor a meaningful opportunity to file a

14   term sheet explaining how this scheme is going to work.  But

15   what I got in response was a form of plan that is completely

16   incoherent.  Among other things, the form only works for

17   individuals.  And this is a corporate case the last time I

18   checked.  More importantly, the plan problems are legion.  And

19   three of the most basic problems are that it talks about a sale

20   in 2021, which was last year.  It relies on two million in

21   contributions that the debtor does -- or two million dollars in

22   funding that the debtor simply doesn't have.  And it discusses

23   the creditors in class 2C in an extensive way, but there is no

24   class 2C.  And as my dad used to say, this is sort of the tip

25   of the iceberg in terms of the problems with this plan.

Fremont Hills Development Corporation

1    The settlement that people seem to think happened has

2  never been presented to me for my approval, assuming that I'm

3  supposed to approve it.  And in perhaps the strangest twist,

4  the individual investors who have relinquished their appeal of

5  my decision that they do not have standing to intervene in a

6  lawsuit have filed an objection to the settlement and further a

7  state court complaint seeking to oust, I guess, the management

8  of this company at some level.  So in short, this is a

9  confusing situation that could have been clarified in a term

10  sheet if it was susceptible of being clarified.

11    In addition to the continuing diminution of the

12  estate, I also find that the debtor has no reasonable

13  likelihood of rehabilitation and therefore cause exists because

14  I find cause under 1112(b)(4)(A) unusual circumstances test

15  does not apply pursuant to Section 1112(b)(2)(B).

16    It's worth noting too that this is the debtor's second

17  failed Chapter 11 case.  Despite the many promises made at the

18  outset of this case, as well as the prior case, this case is

19  coming out just like its predecessor did which is not in a

20  reorganization and in failure.

21    Finally, the question presented is whether I should

22  convert it or dismiss it.  I'll note that according to the

23  debtor, the proposed dismissal is consistent with the proposed

24  settlement that has never been calendared for my approval.  So

25  the debtor has at least acceded to the idea that dismissal is

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1    the most appropriate thing here.  And the U.S. Trustee, I

2    think, today argued for dismissal.  Their papers were

3    ambivalent about conversion or dismissal.  Given the loss of

4    assets and the fact that the property is likely to be

5    foreclosed or something, I would dismiss the case.

6         So those are my thoughts if you want to respond to

7    those, Ms. Weng.

8         MS. WENG:  Yes, Your Honor.

9         Just as a response, if the Court is inclined to

10   dismiss the case, I understand what Your Honor has mentioned.

11   I don't necessarily disagree with what Your Honor said.  We

12   would just request that Your Honor retain jurisdiction for

13   attorneys' fees and perhaps retain jurisdiction on the

14   adversary proceeding.

15        THE COURT:  I would grant the first of those requests

16   and think about the second.  I don't -- dismissed bankruptcy

17   case is not a great place to pin your hopes of jurisdiction on,

18   Ms. Weng.  So the second one I think I'm doubtful that that

19   would be appropriate, but I won't decide it today.  It's not

20   before me.

21        Anyone else want to respond to that?

22        MR. KATZ:  It's Your Honor, this is Ori Katz for 2501

23   Cormick, LLC.  Just very briefly more as an update than

24   argument.

25        We are closed as of today on the property.  And when I

Fremont Hills Development Corporation

1    say we are closed, it means my client has taken title to the

2    property.  That closed earlier today.  The title company missed

3    the window today for recording with the county, and so it will

4    record first thing tomorrow morning.

5            I don't take any position on the dismissal, but I

6    would prefer that it not be dismissed effective today because

7    the last thing I want is there to be some shenanigan between

8    today and tomorrow when the grant deed records.  Grant deed is

9    already with escrow.

10           And so I guess that's a long way of saying I would

11    just like to see the proposed order before it is lodged with

12    Your Honor.  I did file a joinder to the opposition initially,

13    although I'm now taking no position on the dismissal, and just

14    asked that it not be effective as of today so that it doesn't

15    create confusion for my title company.  That's all I, have Your

16    Honor.

17           THE COURT:  All right.  Let's do this then.

18           MR. KELSON:  Your Honor, may I --

19           THE COURT:  Yeah.  Mr. Kelson, goa head.

20           MR. KELSON:  May I be heard?

21           THE COURT:  Yes, of course.

22           MR. KELSON:  Bruce Kelson for BAI Fund I.

23           I understand your position.  I would just -- and I

24    know that the continued existence here of the AP is not in

25    front of you.  But I would encourage you to maintain that.

Fremont Hills Development Corporation

1      I don't know -- I don't think it was clear from the

2  last status conference in the adversary proceeding that there

3  is still a claim that's still alive.  There were four causes of

4  action.  Two dealt with the lis pendens and have been

5  effectively resolved.

6      The third claim dealt with the lien claim.  It was

7  subject to a strong-arm.  That was resolved by this by the sale

8  order.

9      But the fourth claim was for declaratory relief as to

10  lien priority between BAI Fund one and Cormack.  And I believe

11  that has never been addressed.  It's still alive.  And so I

12  think there is still something that needs to be resolved in

13  this Court.

14      I also believe that Mr. Katz would probably advance an

15  argument that something in the sale order would wipe out that

16  claim.  And there's something in the sale order that has

17  continuing jurisdiction before the Court.  So I think there is

18  still a live case in the adversary proceeding that can be

19  resolved here.

20      The settlement, we believe, is very positive.  It

21  offers a lot of benefits, including two million dollars to Bay

22  Area Investment Fund 1, so that it can continue its operations

23  and try to get the investors green cards.  There's also a

24  promise from the buyer that the buyer would cooperate with

25  getting the green cards.  So we think there is still a very --

Fremont Hills Development Corporation

1   a settlement with a lot of benefits.  And we think it can still

2   be resolved in the context of the adversary.  And I know it's

3   not in front of you, but I would encourage -- I would encourage

4   you to allow that case to be resolved so that we could present

5   a motion for approval of a settlement.

6           As Ms. Weng noted, we were on the verge of signing.

7   And then the buyer was served with the lawsuit.  We're hoping

8   we can get a resolution to that, go forward with the

9   settlement, bring it in for approval.  And that would be a

10  consent resolution for everyone on a global basis.  And that

11  would be a -- that would be a successful resolution.  We'd like

12  the Court to keep hold of the AP for that reason.

13          THE COURT:  All right.  Well, that's not before me, as

14  I mentioned before, but thank you for your comments.

15          All right.  This case is dismissed.  I'll ask --

16          MR. KELSON:  Your Honor?

17          THE COURT:  Yes.

18          MR. AVER:  Your Honor, if I may.  One small detail.

19  We'd also like the Court to retain jurisdiction over the sale

20  order and the sale.  Mr. Kelson said that that's already in the

21  order.  I don't know.  But I'd like the dismissal order to

22  provide that the Court does retain jurisdiction just to make

23  sure that there's no loose ends with regard to that.

24          THE COURT:  All right.  The U.S. Trustee's -- I don't

25  know.  We'll see what the order says, and I'll have to look

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Fremont Hills Development Corporation

1    back at the sale order itself.  This case is though ordered

2    dismissed on the U.S. trustee's motion, which I'm granting.

3           Mr. Gaitan, will you upload an order of dismissal

4    after you got the signatures from the relevant parties?

5           And Mr. Katz, to your point, that will take us a

6    couple of days to manage, okay?

7           MR. KATZ:  Thank you, Your Honor.

8           MR. GAITAN:  Thank you, Your Honor.

9           THE COURT:  All right.  Thank you very much.

10          And as far as the parties go, the dismissal order is

11   usually sort of a pro forma thing.  Mr. Aver, to your to your

12   point, if the settlement agreement and the order approving it

13   confers jurisdiction on the Court in some respect, it does

14   that.  I don't think the dismissal order is necessarily the

15   place to litigate, to negotiate what I'm going to retain

16   jurisdiction over because I can promise you that's not how I'm

17   looking at a dismissal order.  Okay?

18          If I have retained jurisdiction in the right format

19   under the right circumstances, I'll keep it.  If not, it's just

20   something that has to be litigated, right?  And remember that

21   this is a court of limited jurisdiction.

22          Okay.  Thank you all very much.  Motion is granted.

23   Thank you to the U.S. Trustee.

24          IN UNISON:  Thank you, Your Honor.

25        (Whereupon these proceedings were concluded at 12:57 PM)

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2    RULINGS:                                    PAGE LINE

3    Case is dismissed.                          14    1

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                    C E R T I F I C A T I O N

2

3       I, Michael Drake, certify that the foregoing transcript is a

4       true and accurate record of the proceedings.

5

6

7

8       _____

9       /s/ MICHAEL DRAKE, CER-513, CET-513

10

11      eScribers

12      7227 N. 16th Street, Suite #207

13      Phoenix, AZ 85020

14

15      Date:  May 10, 2022

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (1)**
7:22
**able (1)**
5:9
**acceded (1)**
9:25
**accomplish (2)**
5:5,21
**accomplished (1)**
6:1
**according (1)**
9:22
**accrue (1)**
7:20
**action (1)**
12:4
**actions (1)**
7:3
**actually (1)**
6:1
**addition (1)**
9:11
**addressed (1)**
12:11
**adequate (1)**
8:4
**administrative (1)**
7:20
**advance (1)**
12:14
**adversary (4)**
10:14;12:2,18;13:2
**afternoon (6)**
3:4,6,7,9,11,13
**against (1)**
6:11
**agreement (4)**
6:12,13,21;14:12
**alive (2)**
12:3,11
**allow (1)**
13:4
**although (1)**
11:13
**ambivalent (1)**
10:3
**Among (1)**
8:16
**AP (2)**
11:24;13:12
**apparent (1)**
5:7
**appeal (1)**
9:4
**appearance (1)**
4:6
**appearing (2)**
3:10;4:8
**application (1)**
6:10

**apply (1)**
9:15
**appointment (2)**
7:5,13
**appropriate (2)**
10:1,19
**approval (4)**
9:2,24;13:5,9
**approve (1)**
9:3
**approving (1)**
14:12
**Area (3)**
3:12;4:9;12:22
**argued (2)**
7:24;10:2
**argument (2)**
10:24;12:15
**around (1)**
4:14
**assessment (1)**
6:1
**asset (1)**
7:18
**assets (4)**
4:25;7:16,23;10:4
**assuming (1)**
9:2
**attached (1)**
5:8
**attorneys' (2)**
7:21;10:13
**audio (1)**
5:1
**Aver (4)**
3:13,13;13:18;14:11
**A-V-E-R (1)**
3:14

## B

**back (7)**
3:21,24;4:1;6:16;8:9,
12;14:1
**BAI (2)**
11:22;12:10
**bankruptcy (1)**
10:16
**basic (1)**
8:19
**basis (1)**
13:10
**Bay (3)**
3:12;4:9;12:21
**behalf (5)**
3:5,8,10,14;4:9
**beneficial (1)**
6:22
**benefits (2)**
12:21;13:1
**best (4)**
7:3,5,8,14
**big (1)**

5:13
**Bonnel- (1)**
6:7
**Bonnel-Roger (1)**
4:5
**Bonnel-Rogers (4)**
3:18;4:7,8,11
**BR (1)**
7:9
**break (1)**
3:25
**briefly (1)**
10:23
**bring (1)**
13:9
**Bruce (2)**
3:11;11:22
**Builder (1)**
3:15
**buyback (1)**
5:10
**buyer (3)**
12:24,24;13:7

## C

**calendared (1)**
9:24
**CALIFORNIA (1)**
3:1
**calling (1)**
4:2
**can (8)**
5:24;6:21;8:10;
12:18,22;13:1,8;14:16
**cards (2)**
12:23,25
**case (23)**
4:24;5:3,19;6:2,4,16,
20,25;7:2,9,16;8:17;
9:17,18,18,18;10:5,10,
17;12:18;13:4,15;14:1
**cash (1)**
7:16
**cause (5)**
7:2,10,15;9:13,14
**causes (1)**
12:3
**chambers (2)**
3:22;4:1
**changing (1)**
6:14
**Chapter (1)**
9:17
**checked (1)**
8:18
**circumstances (4)**
7:7,12;9:14;14:19
**claim (5)**
12:3,6,6,9,16
**claimant (1)**
3:14
**claims (1)**

6:14
**clarified (2)**
9:9,10
**class (2)**
8:23,24
**clear (2)**
8:11;12:1
**CLERK (1)**
3:2
**client (3)**
6:8,11;11:1
**close (1)**
5:9
**closed (4)**
8:8;10:25;11:1,2
**cogent (1)**
8:5
**coming (2)**
3:18;9:19
**comments (2)**
6:23;13:14
**company (3)**
9:8;11:2,15
**complaint (2)**
6:9;9:7
**complete (1)**
6:9
**completely (1)**
8:15
**computer (2)**
4:2,13
**computers (1)**
3:21
**conclude (1)**
7:22
**concluded (1)**
14:25
**conference (2)**
5:8;12:2
**confers (1)**
14:13
**confusing (1)**
9:9
**confusion (1)**
11:15
**consent (1)**
13:10
**consistent (1)**
9:23
**context (1)**
13:2
**continue (2)**
8:4;12:22
**continued (2)**
5:4;11:24
**continues (1)**
7:20
**continuing (4)**
4:25;7:23;9:11;
12:17
**contributions (1)**
8:21
**conversion (4)**

6:14
**convert (6)**
4:16;7:2,11,15;8:2;
9:22
**cooperate (1)**
12:24
**cooperating (1)**
3:21
**Cormac (1)**
3:10
**Cormack (6)**
7:19;8:4,6,7,12;
12:10
**Cormick (1)**
10:23
**corporate (1)**
8:17
**Corporation (1)**
3:3
**county (1)**
11:3
**couple (1)**
14:6
**course (1)**
11:21
**COURT (27)**
3:6,17,19,24;4:11;
5:22;6:9,23;7:1,2;9:7;
10:9,15;11:17,19,21;
12:13,17;13:12,13,17,
19,22,24;14:9,13,21
**courthouse (1)**
4:14
**courtroom (2)**
3:20;4:2
**courtrooms (1)**
4:14
**create (1)**
11:15
**creditor (1)**
7:18
**creditors (4)**
6:18;7:4,14;8:23

## D

**dad (1)**
8:24
**day (2)**
6:3,4
**day-by-day (1)**
6:14
**days (1)**
14:6
**dealt (2)**
12:4,6
**debtor (16)**
3:5;5:5,9,14,15,20;
7:24,25;8:3,6,13,21,22;
9:12,23,25
**debtors (1)**
6:1
**debtor's (2)**

Case: 21-50240   Doc# 169   Filed: 05/10/22   Entered: 05/10/22 09:43:17   Page 17 of
21

4:25;9:16
**decide (3)**
7:3,4;10:19
**decision (1)**
9:5
**declaratory (1)**
12:9
**deed (2)**
11:8,8
**Despite (1)**
9:17
**detail (1)**
13:18
**details (1)**
5:18
**Development (1)**
3:3
**difficulties (1)**
4:8
**diminishment (1)**
7:23
**diminution (1)**
9:11
**disagree (2)**
5:25;10:11
**disclosure (2)**
5:12,17
**discussed (1)**
8:10
**discusses (1)**
8:22
**discussion (1)**
6:5
**dismiss (7)**
4:16;6:25;7:2,11;
9:22;10:5,10
**dismissal (14)**
7:4,7,13;9:23,25;
10:2,3;11:5,13;13:21;
14:3,10,14,17
**dismissed (5)**
5:20;10:16;11:6;
13:15;14:2
**dismissing (1)**
6:15
**docket (1)**
6:2
**documents (1)**
8:5
**dollars (2)**
8:21;12:21
**doubtful (1)**
10:18

**E**

**earlier (1)**
11:2
**effective (2)**
11:6,14
**effectively (1)**
12:5
**effort (1)**

6:5
**else (1)**
10:21
**encourage (3)**
11:25;13:3,3
**ends (1)**
13:23
**entity (1)**
5:18
**escrow (1)**
11:9
**establish (1)**
7:7
**established (1)**
4:23
**estate (7)**
6:17;7:6,8,14,16,20;
9:12
**estate's (2)**
7:3,23
**even (1)**
6:6
**everybody (1)**
6:15
**everybody's (1)**
6:3
**everyone (2)**
6:16;13:10
**ex (1)**
6:10
**examiner (1)**
7:5
**existence (1)**
11:24
**exists (1)**
9:13
**expenses (1)**
7:21
**explaining (1)**
8:14
**explanation (1)**
8:5
**extensive (1)**
8:23

**F**

**fact (1)**
10:4
**failed (1)**
9:17
**failings (1)**
5:11
**failure (1)**
9:20
**far (3)**
5:10;8:10;14:10
**favors (1)**
6:19
**feasibility (1)**
5:14
**FEBRUARY (1)**
3:1

**feel (1)**
6:3
**fees (1)**
7:21,21;10:13
**file (4)**
6:8;7:25;8:13;11:12
**filed (1)**
9:6
**Finally (1)**
9:21
**find (4)**
7:15;8:5;9:12,14
**finds (1)**
7:2
**first (5)**
4:19;7:1;8:3;10:15;
11:4
**five (1)**
3:2
**Folks (1)**
3:25
**foreclosed (1)**
10:5
**form (2)**
8:15,16
**forma (1)**
14:11
**format (1)**
14:18
**forward (1)**
13:8
**four (1)**
12:3
**fourth (1)**
12:9
**Fremont (1)**
3:2
**front (1)**
11:25;13:3
**fruition (1)**
5:3
**Fund (5)**
3:12;4:10;11:22;
12:10,22
**funder (1)**
8:3
**funding (1)**
8:22
**further (1)**
9:6

**G**

**Gaitan (7)**
3:7,7;4:19,21;5:22;
14:3,8
**gave (1)**
8:13
**generally (1)**
7:15
**Given (1)**
10:3
**glad (1)**

4:12
**global (1)**
13:10
**goa (1)**
11:19
**Good (6)**
3:4,6,7,9,11,13
**grab (2)**
3:20;4:1
**grant (3)**
10:15;11:8,8
**granted (1)**
14:22
**granting (1)**
14:2
**great (1)**
10:17
**green (2)**
12:23,25
**guess (2)**
9:7;11:10

**H**

**happened (1)**
9:1
**head (1)**
11:19
**hear (2)**
4:19;5:24
**heard (2)**
4:19;11:20
**hearing (1)**
7:22
**highly (1)**
6:17
**Hills (1)**
3:2
**hold (1)**
13:12
**Honor (21)**
3:4,7,9,11,13,16;
4:21;5:25;10:8,10,11,
12,22;11:12,16,18;
13:16,18;14:7,8,24
**hopes (1)**
10:17
**hoping (1)**
13:7

**I**

**iceberg (1)**
8:25
**idea (1)**
9:25
**identify (1)**
7:6
**importantly (1)**
8:18
**Inc (1)**
3:15
**inclination (1)**

6:25
**inclined (1)**
10:9
**including (2)**
5:13;12:21
**incoherent (1)**
8:16
**indicated (1)**
5:16
**individual (2)**
4:9;9:4
**individuals (1)**
8:17
**initially (1)**
11:12
**interest (3)**
7:6,8,14
**interference (1)**
5:1
**intervene (1)**
9:5
**into (3)**
3:22;4:1;6:5
**Investment (3)**
3:12;4:9;12:22
**investors (3)**
4:9;9:4;12:23

**J**

**joinder (1)**
11:12
**Jorge (1)**
3:7
**JOSE (1)**
3:1
**Julie (1)**
4:8
**jurisdiction (10)**
10:12,13,17;12:17;
13:19,22;14:13,16,18,
21

**K**

**Katz (7)**
3:9,9;10:22,22;
12:14;14:5,7
**keep (2)**
13:12;14:19
**Kelson (9)**
3:11,11;11:18,19,20,
22,22;13:16,20
**Kelson's (1)**
6:11
**kind (1)**
6:13

**L**

**largest (1)**
7:18
**last (5)**

Case: 21-50240    Doc# 169    Filed: 05/10/22    Entered: 05/10/22 09:43:17    Page 18 of
21

7:22;8:17,20;11:7;
12:2
**lawsuit (2)**
9:6;13:7
**least (2)**
6:20;9:25
**left (1)**
5:5
**legal (1)**
7:1
**legion (1)**
8:18
**level (1)**
9:8
**lien (3)**
3:14;12:6,10
**likelihood (1)**
9:13
**likely (1)**
10:4
**limited (1)**
14:21
**Line (1)**
3:2
**lis (1)**
12:4
**litigate (1)**
14:15
**litigated (1)**
14:20
**little (1)**
5:17
**live (1)**
12:18
**LLC (3)**
3:10,12;10:23
**loan (1)**
8:6
**lodged (1)**
11:11
**long (1)**
11:10
**look (1)**
13:25
**looking (2)**
4:14;14:17
**loose (1)**
13:23
**loss (2)**
4:25;10:3
**lot (4)**
6:1,5;12:21;13:1

**M**

**maintain (1)**
11:25
**manage (1)**
14:6
**management (1)**
9:7
**many (2)**
5:11;9:17

**marketing (1)**
5:10
**may (3)**
11:18,20;13:18
**maybe (1)**
4:18
**McDonald (1)**
6:5
**meaningful (2)**
6:4;8:13
**means (1)**
11:1
**mechanics (1)**
3:14
**mediation (1)**
6:6
**mentioned (2)**
10:10;13:14
**might (1)**
6:10
**million (3)**
8:20,21;12:21
**minute (1)**
3:25
**missed (1)**
11:2
**monthly (1)**
5:14
**more (4)**
5:11,20;8:18;10:23
**morning (1)**
11:4
**most (3)**
5:7;8:19;10:1
**motion (7)**
4:16,18;5:23;8:2;
13:5;14:2,22
**much (3)**
8:9;14:9,22
**must (1)**
7:4

**N**

**Nancy (1)**
3:4
**necessarily (2)**
10:11;14:14
**need (3)**
3:20,21;4:3
**needs (1)**
12:12
**negotiate (1)**
14:15
**nobody (1)**
6:7
**none (2)**
5:2;8:1
**note (1)**
9:22
**noted (1)**
13:6
**noting (1)**

9:16
**Nowhere (1)**
8:5
**number (1)**
3:2
**numerous (1)**
5:14

**O**

**objected (1)**
5:13
**objection (2)**
5:17;9:6
**objective (1)**
4:24
**observer (1)**
4:8
**off (1)**
6:11
**offers (1)**
12:21
**office (1)**
5:12
**one (5)**
4:12;8:11;10:18;
12:10;13:18
**one-day (1)**
6:6
**only (3)**
4:12;6:17;8:16
**operations (1)**
12:22
**opportunity (1)**
8:13
**opposition (4)**
4:17,20;5:2;11:12
**option (3)**
5:10;7:19;8:9
**order (15)**
6:11;11:11;12:8,15,
16;13:20,21,21,25;
14:1,3,10,12,14,17
**ordered (2)**
7:25;14:1
**Ori (2)**
3:9;10:22
**original (1)**
5:12
**oust (1)**
9:7
**out (2)**
9:19;12:15
**outline (1)**
7:25
**outset (1)**
9:18
**over (2)**
13:19;14:16
**overdue (1)**
8:8

**P**

**papers (2)**
4:22;10:2
**parte (1)**
6:10
**participated (1)**
6:15
**parties (2)**
14:4,10
**party (1)**
5:16
**pay (5)**
5:15,16;7:22;8:6,11
**payments (2)**
5:14;8:4
**pendens (1)**
12:4
**people (1)**
9:1
**perhaps (2)**
9:3;10:13
**period (1)**
5:6
**perspective (1)**
5:19
**pin (1)**
10:17
**place (2)**
10:17;14:15
**plan (5)**
7:25;8:3,15,18,25
**please (1)**
5:24
**pm (3)**
4:4,4;14:25
**point (6)**
4:23;5:4;6:25;7:17;
14:5,12
**position (3)**
11:5,13,23
**positive (1)**
12:20
**possible (1)**
8:1
**predecessor (1)**
9:19
**predicted (1)**
6:7
**prefer (1)**
11:6
**prejudicial (1)**
6:17
**present (1)**
13:4
**presented (2)**
9:2,21
**pretty (1)**
8:11
**principal (1)**
7:18
**prior (2)**

5:16;9:18
**priority (1)**
12:10
**pro (1)**
14:11
**probably (1)**
12:14
**problem (3)**
4:11;5:13,13
**problems (4)**
4:13;8:18,19,25
**proceeding (3)**
10:14;12:2,18
**proceedings (1)**
14:25
**process (1)**
7:10
**promise (2)**
12:24;14:16
**promises (1)**
9:17
**property (5)**
8:6,12;10:4,25;11:2
**proposed (3)**
5:14;9:23,23;11:11
**protection (1)**
8:4
**provide (1)**
13:22
**purchase (2)**
8:9,12
**purported (1)**
8:9
**purports (1)**
8:6
**purpose (1)**
7:24
**pursuant (1)**
9:15
**put (1)**
6:5
**putting (1)**
6:16

**Q**

**Queensland (1)**
3:15
**quotations (1)**
7:17

**R**

**Raymond (1)**
3:13
**read (1)**
4:17
**really (3)**
5:20;6:18;8:10
**reason (1)**
13:12
**reasonable (1)**
9:12

Case: 21-50240    Doc# 169    Filed: 05/10/22    Entered: 05/10/22 09:43:17    Page 19 of
21

**reasons (1)**
5:2
**recent (1)**
5:7
**Recess (1)**
4:4
**record (1)**
11:4
**recording (1)**
11:3
**records (1)**
11:8
**regard (1)**
13:23
**rehabilitation (1)**
9:13
**relevant (1)**
14:4
**relief (1)**
12:9
**relies (1)**
8:20
**relinquished (1)**
9:4
**rely (1)**
5:15
**remember (1)**
14:20
**reorganization (1)**
9:20
**reorganize (1)**
7:25
**repurchase (1)**
7:19
**request (1)**
10:12
**requests (1)**
10:15
**resolution (3)**
13:8,10,11
**resolved (6)**
12:5,7,12,19;13:2,4
**respect (1)**
14:13
**respectfully (1)**
5:25
**respond (3)**
6:24;10:6,21
**response (2)**
8:15;10:9
**responses (1)**
8:1
**restraining (1)**
6:10
**retain (5)**
10:12,13;13:19,22;
14:15
**retained (1)**
14:18
**right (11)**
3:24;4:16;8:12;
11:17;13:13,15,24;
14:9,18,19,20

**Rogers' (1)**
6:8

**S**

**sale (10)**
5:9;8:7,8,19;12:7,15,
16;13:19,20;14:1
**SAN (1)**
3:1
**satisfy (1)**
7:12
**saying (1)**
11:10
**scheme (1)**
8:14
**second (4)**
3:22;9:16;10:16,18
**Section (2)**
7:12;9:15
**secured (2)**
3:14;7:18
**seeking (1)**
9:7
**seem (1)**
9:1
**seems (1)**
8:11
**sense (1)**
8:1
**serve (1)**
7:3
**served (1)**
13:7
**settlement (13)**
6:4,6,12,13,21;9:1,6,
24;12:20;13:1,5,9;
14:12
**sheet (5)**
5:8,11,15;8:14;9:10
**shenanigan (1)**
11:7
**short (2)**
5:6;9:8
**signatures (1)**
14:4
**signing (2)**
6:11;13:6
**silent (1)**
5:10
**simply (1)**
8:22
**single (2)**
6:3,4
**situation (1)**
9:9
**slowly (1)**
3:18
**small (1)**
13:18
**sold (3)**
7:17,17;8:7
**sorry (1)**

4:7
**sort (2)**
8:24;14:11
**speak (1)**
4:22
**speaking (1)**
7:15
**square (1)**
6:16
**standard (1)**
7:1
**standing (1)**
9:5
**state (2)**
6:9;9:7
**stated (1)**
5:2
**statement (3)**
5:8,12,17
**States (1)**
3:8
**status (2)**
5:7;12:2
**stay (1)**
6:20
**Step (2)**
7:10,11
**still (8)**
7:24;12:3,3,11,12,18,
25;13:1
**strangest (1)**
9:3
**strong-arm (1)**
12:7
**subject (1)**
12:7
**substantial (2)**
4:25;7:16
**successful (1)**
13:11
**suffered (1)**
5:11
**Sullivan (1)**
7:9
**supposed (1)**
9:3
**sure (1)**
13:23
**survive (1)**
5:3
**susceptible (1)**
9:10

**T**

**talks (1)**
8:19
**technical (2)**
4:7,13
**term (5)**
5:8,11,15;8:14;9:9
**terms (1)**
8:25

**test (1)**
9:14
**thanks (1)**
5:22
**therefore (1)**
9:13
**third (3)**
5:16;7:12;12:6
**though (1)**
14:1
**Thoughts (2)**
4:18;10:6
**three (1)**
8:19
**three-step (1)**
7:10
**tip (1)**
8:24
**title (3)**
11:1,2,15
**today (8)**
10:2,19,25;11:2,3,6,
8,14
**tomorrow (2)**
11:4,8
**trustee (8)**
3:8;4:17,18;7:5,14,
21;10:1;14:23
**Trustee's (2)**
13:24;14:2
**try (1)**
12:23
**TUESDAY (1)**
3:1
**twist (1)**
9:3
**two (4)**
8:20,21;12:4,21

**U**

**under (4)**
4:24;7:1;9:14;14:19
**UNISON (1)**
14:24
**United (1)**
3:8
**unusual (3)**
7:7,11;9:14
**up (2)**
4:2;6:13
**update (1)**
10:23
**upload (1)**
14:3
**use (1)**
7:17
**used (1)**
8:24
**usually (1)**
14:11

**V**

**verge (1)**
13:6
**view (1)**
4:24

**W**

**waiting (2)**
3:16,17
**walk (2)**
3:21;4:1
**wander (1)**
4:14
**way (4)**
3:21;8:8,23;11:10
**Weng (14)**
3:4,4,6,16,18,23;4:5,
20;5:24,25;10:7,8,18;
13:6
**Whereupon (1)**
14:25
**willing (1)**
8:11
**window (1)**
11:3
**wipe (1)**
12:15
**without (1)**
7:21
**word (1)**
7:17
**work (1)**
8:14
**working (1)**
6:3
**works (1)**
8:16
**worth (1)**
9:16
**wraps (1)**
6:13

**Y**

**year (1)**
8:20

**1**

**1 (5)**
3:1;4:10;6:16;7:10;
12:22
**11 (1)**
9:17
**1112b1 (1)**
7:1
**1112b2 (1)**
7:12
**1112b2B (1)**
9:15

Case: 21-50240   Doc# 169   Filed: 05/10/22   Entered: 05/10/22 09:43:17   Page 20 of
21

**1112b4A (1)**
  9:14
**12:37 (1)**
  4:4
**12:41 (1)**
  4:4
**12:57 (1)**
  14:25

---

**2**

**2 (1)**
  7:11
**2021 (1)**
  8:20
**2022 (1)**
  3:1
**2501 (2)**
  3:10;10:22
**2C (2)**
  8:23,24

---

**5**

**522 (1)**
  7:9

---

**6**

**6044 (1)**
  7:9

Case: 21-50240   Doc# 169   Filed: 05/10/22   Entered: 05/10/22 09:43:17   Page 21 of 21